280 F.2d 110
 CHICAGO, ROCK ISLAND & PACIFIC RAILROAD COMPANY, Appellant,
v.
CHICAGO AND NORTH WESTERN RAILWAY COMPANY, Appellee.
CHICAGO AND NORTH WESTERN RAILWAY COMPANY, Appellant,
v.
CHICAGO, ROCK ISLAND & PACIFIC RAILROAD COMPANY, Appellee.
 No. 16424.
 No. 16425.
 United States Court of Appeals Eighth Circuit.
 August 10, 1960.
 
 COPYRIGHT MATERIAL OMITTED A. B. Howland, Des Moines, Iowa, for Chicago, R. I. & P. R. Co.
 Ray H. Johnson, Jr., Des Moines, Iowa, for Chicago & N. W. R. Co.
 Before SANBORN, MATTHES and BLACKMUN, Circuit Judges.
 MATTHES, Circuit Judge.
 
 
 1
 Appeals in this diversity action grow out of an accident which occurred on February 5, 1955, when B. L. Kleppe, an employee of Chicago & North Western Railway Company, hereinafter called "North Western", was injured while attempting to release a hand brake on a railroad car which was owned by Chicago, Rock Island & Pacific Railroad Company, hereinafter called "Rock Island." North Western was able to settle Kleppe's claim for $70,000, and thereafter it brought the instant action against Rock Island for indemnity or contribution. The action was tried before the court, resulting in a finding denying North Western indemnity but allowing contribution in the amount of $35,000, or one-half of the settlement amount. Judgment was accordingly entered. Both parties have appealed; North Western claims it is entitled to full indemnity of $70,000; Rock Island claims North Western is not entitled to any amount.
 
 
 2
 Inasmuch as the relevant facts are detailed with precision in the exhaustive opinion of the Honorable Henry Graven, the trial judge, reported in 179 F.Supp. 33, no useful purpose will be served by another full recitation of the facts.
 
 
 3
 In summary, it may be stated that the railroad tracks of North Western and Rock Island passed through Goldfield, Iowa, intersecting each other at right angles, and a curved transfer or interchange track connected the two lines. At about 9:00 A.M., February 5, 1955, Rock Island placed five of its cars on the interchange track, all destined for points on North Western lines. At 11:45 A.M. on the same day, one of North Western's trains, with instructions to pick up the cars, arrived at Goldfield and waybills were obtained from the Rock Island station. The hand brakes had been set on four of the cars, including the most northerly one, which was designated as "Rock Island 262261," and Kleppe, as North Western's brakeman, ascended to a platform on this car for the purpose of releasing the brake. Being unable to release the brake while the car was standing still, he signalled another employee to move the cars. As the cars were placed in motion, Kleppe continued to pull on the brake handle and after the car had moved 15 to 20 feet, the brake handle and part of the brake housing came loose and Kleppe was thrown to the ground and seriously injured. From the evidence it appears that the brake was defective, in that parts of its mechanism were missing.
 
 
 4
 When Kleppe made claim against North Western, defense of the claim was tendered to, but refused by, Rock Island, and that company refused to participate in the negotiations or settlement of the claim, which was effected without suit being filed.
 
 
 5
 We are first confronted with the contention that the Codes of Car Service & Interchange Rules, promulgated by the Association of American Railroads, and to which North Western and Rock Island were parties, operated as a waiver of, or bar to, any claim for indemnity or contribution. Portions of the rules relied upon by North Western are set out verbatim in the opinion of the trial court. 179 F.Supp. at pages 40, 41. In particular, Rock Island relies upon Rule 1(a) which relates to "Care of Foreign Freight Cars" and "Car Service" Rule 7.[1]
 
 
 6
 After giving careful consideration to this defense, it was disallowed, the trial court holding that "the rules relied upon by the defendant do not operate as a waiver of or a bar to any claim for indemnity or contribution that the plaintiff might have against the defendant arising out of the mishap. It is the view of the Court that the most that appears from the evidence is that many railroads heretofore had observed the protocol of not making claims against other railroads of the nature here involved." 179 F.Supp., at pages 41-42. We are in accord with this finding and conclusion.
 
 
 7
 There can be little dispute with respect to the pertinent legal principle. Generally, parties sui juris may waive a legal right, including the right of indemnity or contribution, provided of course that such an agreement is not contrary to public policy or void because of illegality. See and compare Govero v. Standard Oil Co., 8 Cir., 192 F.2d 962, at pages 964, 965, where Judge Sanborn, in speaking for the Court, stated:
 
 
 8
 "We know of no public policy which would prevent a landlord and a tenant from agreeing that the tenant should assume, and agree to indemnify the landlord against, the risk of loss, damages and injuries occurring on the premises during the term of the lease, whether due to the negligence of the landlord or not."
 
 
 9
 See also, Aluminum Co. of America v. Hully, 8 Cir., 200 F.2d 257, 262, and 17 C.J.S. Contracts § 262, p. 645.
 
 
 10
 The fatal weakness of Rock Island's contention becomes apparent on examination of the Car Service & Interchange Rules upon which it so strenuously relies. We are unable to detect any language therein which, even by inference, could be construed as constituting a waiver of, or bar to, the legal right of one railroad member to seek indemnity or contribution from another member. There is no reference of any kind in the rules to indemnity or contribution. In our view, the rules are solely designed to govern the care and maintenance of cars belonging to one carrier while in possession of another.[2]
 
 
 11
 We cannot agree with Rock Island that the language in Rule 1(a) that "(e)ach railroad is responsible for the condition of all cars on its line, and must give to all equal care as to inspection and lubrication," or in Rule 7 that "(u)nless otherwise arranged between the roads concerned the receiving road shall be responsible for the cars * * *," insulates Rock Island from a claim for indemnity or contribution. If the railroad companies which are parties to the Code of Rules desire to waive this legal right effectively, they should have no difficulty in clearly expressing such intent, and until they do, efforts to have such a provision read into the rules by judicial interpretation will, in all likelihood, be unavailing.
 
 
 12
 We now proceed to consider the merits of North Western's claim to indemnity or contribution. Briefly, Rock Island's position is that it was not liable to Kleppe. North Western contends that Rock Island was primarily liable, or, at the very least, equally liable, for Kleppe's injuries. In view of these diametrically opposed positions, it may be desirable to consider the nature of these remedies of indemnity and contribution. Both actions are premised on a finding that two or more parties have been guilty of actionable wrong thereby bringing injury or damage to some third person. The Supreme Court of Iowa, in Best v. Yerkes, 247 Iowa 800, 77 N.W.2d 23, 26, 27, 28, 60 A.L.R.2d 1354, stated: "The right to indemnity, or contribution, presupposes actionable negligence of both parties, toward a third party." (Emphasis supplied). At common law, when one of the guilty parties was made to bear the entire damage, no relief was afforded him, as against his co-tortfeasors, upon the theory that courts would not adjust rights between wrongdoers. However, Iowa, as other jurisdictions, recognized exceptions to this general rule by way of allowing indemnity, or full recovery of the amount expended, when it could be shown that the one bearing the full loss was not guilty of actual wrong, but was caused to be constructively liable in some respect. Such exceptions were noted in Best v. Yerkes, supra, where the Iowa court stated, 77 N.W.2d at page 27:
 
 
 13
 "While stating the general rule, this court has recognized and applied many exceptions. Thus, in cases of derivative liability, where a principal or employer has been held negligent only because of some act of his agent or employe, he has been allowed to recover indemnity from the one guilty of the actual negligent act. [citing cases]. So in workman's compensation cases, so-called `safe premises or property' cases, city street and sidewalk cases, cases involving building contractors and subcontractors, cases in which an employe is directed to do an act not openly and apparently wrong, and cases involving the right to indemnity as between the supplier of a defective product which does harm and the merchant who stocks and sells it without inspection, indemnity has been frequently allowed."
 
 
 14
 Frequently, the courts, in considering the right to indemnity, speak in terms of "active" vs. "passive" negligence, or "primary" and "secondary" liability. See Best v. Yerkes, supra, and compare Franzen v. Dimock Gould & Co., Iowa, 101 N.W.2d 4, 7, where city recovered indemnity from property owner in a "sidewalk case."
 
 
 15
 However, where both, or all parties, are equally guilty of an unintentional or inadvertent wrong, i. e., negligence, so that it cannot be said that one is more guilty than the other, indemnity could not be had, for there is no "innocent" party, who although liable, was guilty of no actual wrong. Again, the common law rule in such a situation was that no relief could be afforded to joint wrongdoers. However, in some jurisdictions, by statute or decisional law, contribution is recognized and enforced as an equitable remedy.[3]
 
 
 16
 Apparently, prior to 1956, no action for contribution was recognized in Iowa, and the only remedy available to the party upon whom the loss fell was to seek indemnity by proving that his negligence was but passive, or that his liability was secondary as against the active negligence or primary liability of another. In that year, the Supreme Court of Iowa, in Best v. Yerkes, supra, first recognized that an action for contribution would lie, absent a showing of intentional wrong, moral turpitude, or concerted action by the alleged tortfeasors. In referring to the common law rule denying contribution, the Court observed, 77 N. W.2d at page 28:
 
 
 17
 "But this reason fails when the tort committed against the third party was due only to inadvertence, without any intent on the part of the tort-feasors to injure him. Consequently we conclude that the minority rule which permits contribution or indemnity in negligence cases has the firmer foundation."
 
 
 18
 Since the Best decision, the Iowa court has re-affirmed this holding and applied the remedy. See and compare Van Tiger v. Hendricks, 249 Iowa 25, 85 N.W.2d 543, 545; Constantine v. Scheidel, 249 Iowa 953, 90 N.W.2d 10, and Hawkeye-Security Ins. Co. v. Lowe Construction Co., Iowa, 99 N.W.2d 421, 425.
 
 
 19
 Now that discussion has been had as to the Iowa law which recognizes both equitable remedies, indemnity and contribution, we must turn again to our initial statement concerning the necessity of a common liability as the condition precedent to any such action. It is our view that much of the confusion and disagreement between the parties here is occasioned by the failure to consider the real meaning of "common liability." Rock Island contends that "common liability is absent when one alleged tort-feasor is liable, if at all, only for negligence, and the other's liability is predicated upon a statute which supercedes the common law, and renders the second tort-feasor absolutely liable." The essence of the action for contribution is common liability to the injured person, not liability for common negligence, or similar negligence, or like negligence. Simply stated, common liability means that each party, by reason of his wrongful act, is made legally liable to respond in damages to the injured party. Absent such liability on the part of the person from whom indemnity or contribution is sought, how can it be said, in evoking the equitable remedy, that the one seeking relief has borne an unfair share of the loss for which all are liable? A typical situation arises when contribution is sought from the husband of the injured party, but denied because, by marital immunity, the husband could not be liable to his wife. The Iowa court, in effect, specifically recognized the necessity of common liability in Van Tiger v. Hendricks, supra, 85 N.W.2d 543, 545, where defendant in the personal injury action sought to implead the 16 year old son of plaintiff for purposes of asserting a claim to contribution. The court put the question in these words:
 
 
 20
 "Could a mother have a claim against her son, based on either negligence or recklessness, which defendants might assert if judgment goes against them in the main case? * * * We may properly express grave doubt as to the probability of an unemancipated minor son becoming liable under the potential situation presented here * * *."
 
 
 21
 See, also, discussion, Zontelli Brothers v. Northern Pacific Railway Co., supra, 263 F.2d at pages 197, 198. This element, liability to the injured person, finds further expression in the requirement that one seeking contribution must establish that the injured party was free of contributory negligence, if such defense would have barred the injured person's recovery. See Hawkeye-Security Ins. Co. v. Lowe Construction Co., supra, 99 N.W. 2d at page 425.
 
 
 22
 With this somewhat extended discussion behind us, we are now able to state the instant question in concrete terms. Was Rock Island guilty of an act of negligence, which was the proximate cause of Kleppe's injury and damage, which thereby gave rise to a right of action in Kleppe against Rock Island? If so, then if it can be said that North Western, subject only to statutory liability as the employer of Kleppe, was without actual fault, and that Rock Island's negligence was the sole proximate cause, then North Western would be entitled to indemnity. On the other hand, if it can be said that the negligence of Rock Island concurred with that of North Western to proximately cause the injury, and that no greater fault lies with either, then North Western would be entitled to contribution.
 
 
 23
 Now, as to common liability in the factual situation before us, it is conceded that North Western's duties and liabilities as to Kleppe were based upon the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. We need not discuss the various factors giving rise to such liability, for that area is amply covered in the trial court's opinion. It is sufficient to say that the court ruled that North Western, having accepted the defective car, could have been found in violation of the Federal Safety Appliance Acts, 45 U.S.C.A. § 1 et seq. The trial court found further, however, that North Western was guilty of actionable negligence under the F.E.L.A. in failing in its duty to inspect the car for defects. Inasmuch as no suit was filed by Kleppe, it is impossible to say which of these two elements of liability formed the basis of North Western's settlement. However, the evidence fully supported these findings, and they are not clearly erroneous.
 
 
 24
 It is clear that Rock Island's duty toward Kleppe was not fixed by the F.E. L.A. because Kleppe was not its employee. This is the keystone of the assertion that there could be no common liability — Rock Island first insists that if it ever had a common law duty to Kleppe, this duty was superseded and ceased upon a finding that North Western was the one who violated the Federal Safety Appliance Acts. The gist and effect of this argument is that a delivering carrier's duty and liability to an employee of a receiving carrier, with respect to a defective car, is cut off and terminated when the car is accepted by the receiving carrier, and that upon acceptance of the car the receiving carrier becomes, by virtue of the federal statute, fully responsible to one of its employees injured by reason of the defective car. Of course, it is true that, as between Rock Island and North Western, only one could be found guilty of the violation, and to this extent, Rock Island's duties under the Federal Safety Appliance Acts did cease upon delivery of the car to North Western. However, what Rock Island overlooks, or ignores, is that in fact no action could be brought by Kleppe under the Federal Safety Appliance Acts — there is no such personal right — and in an action against his employer, the force of its proscriptions would become meaningful to Kleppe only through suit under the F.E.L.A. See penalty sections, 45 U.S.C.A. §§ 6, 13, and see Jacobson v. New York, N. H. & H. R. Co., 1 Cir., 206 F.2d 153, 155, affirmed, 347 U.S. 909, 74 S.Ct. 474, 98 L.Ed. 1067; Carter v. Atlanta & St. A. B. Ry. Co., 338 U.S. 430, 434, 70 S.Ct. 226, 94 L.Ed. 236. Thus, the real contention of Rock Island is, in effect, that Kleppe had no right of action except under the F.E.L.A., or in other words, that his exclusive remedy must lie against his employer.
 
 
 25
 When Rock Island's contention is stated in this manner, it is clear that its position is untenable. Duties and liabilities are not limited to violations of the Federal Safety Appliance Acts. This point is well illustrated in the holding of the Court in Patton v. Baltimore & O. R. Co., 3 Cir., 197 F.2d 732, where the defendant railroad was found not to have violated the Federal Safety Appliance Acts. There, the Court stated, at page 741:
 
 
 26
 "But the fact, however, that the plaintiff may not predicate B & O's liability on the Safety Appliance Acts * * * does not absolve the railroad. The plaintiff has, we conclude, another and separate basis upon which to base her claims, that of negligence actionable at common law. The railroad had the duty of delivering its cars in reasonably safe condition, and it was required to properly inspect them. Restatement, Torts, § 392; (citing cases)."
 
 
 27
 Furthermore, it is clear that the duties owed to Kleppe were not exclusively those of his employer. Rock Island's obligation to him may be illustrated by this statement found in 44 Am.Jur., Railroads § 381:
 
 
 28
 "Connecting railroad companies may mutually agree to transport the loaded freight cars of each other over their respective lines. Under such agreement each is under obligation to exercise due diligence in providing reasonably safe cars for the service contemplated. Such duty is not limited to the corporations as such, but extends to and is owed to their servants who must necessarily handle the cars, and who may be exposed to danger arising from their unsafe or defective condition. The company neglecting this duty is liable in damages for its negligence. * * * The receiving company is answerable to its employees, if it undertakes to use the cars of the other company without due inspection, * * * but the neglect of the receiving company to perform this duty does not excuse or relieve the delivering company from liability for injuries resulting from its negligence in delivering unsafe and defective cars." (Emphasis supplied).
 
 
 29
 See also 74 C.J.S. Railroads § 368, p. 901. This circuit recently had occasion to consider these coexistent duties in Chicago, Rock Island & Pacific Railroad Co. v. Williams, supra, 245 F.2d 397, where plaintiff, an employee of the shipper, was injured while loading a defective car which had been supplied by Rock Island. We adhered to our prior decision in St. Louis-San Francisco Ry. Co. v. Ewan, 8 Cir., 26 F.2d 619, at page 620, quoting as follows:
 
 
 30
 "It is a carrier's duty to use ordinary care to deliver cars reasonably safe for the use of shippers and their employees while the cars are being loaded or unloaded. Copeland v. Chicago, B. & Q. R. Co. (C.C.A.), 293 F. 12, 15. The employer's duty to provide for the employee a safe place in which to work may be added in the circumstances but does not supplant the carrier's duty. `The carrier cannot impose this duty to furnish cars reasonably safe on the shipper, to its own relief from liability for injuries to an employee of the shipper. If the carrier is negligent in furnishing a defective car to the shipper, and the shipper in turn is negligent in furnishing it to his employee to be loaded, the carrier and shipper are both liable to the injured employee; for the proximate cause of the injury is the defective car. * * *' [quoting Waldron v. Director General of Railroads (C.C.A.) 266 F. 196, 198]." (Emphasis supplied).
 
 
 31
 The Iowa court had occasion to define the extent of the carrier's common law duty as to defective cars, in Jackson v. Chicago, M., St. P. & P. R. Co., 238 Iowa 1253, 30 N.W.2d 97, where an employee of the consignee was injured while unloading a shipment. There, the Court held that plaintiff stood in the position of an invitee to whom defendant owed the duty of reasonable care.
 
 
 32
 We recognize that the foregoing cases did not involve injured employees of another railroad. However, see and compare, Lowden v. Hanson, 8 Cir., 134 F.2d 348, 350, involving a defective switch, owned and maintained by one railroad and used by another, pursuant to trackage agreements. The plaintiff's employer was held liable for negligence under the F.E.L.A., and the co-defendant railroad, owner of the defective switch, was held liable for common law negligence, liability in each case being based upon failure to inspect. We are unable to discern any reason why Rock Island's duty here should not extend to an employee of another railroad company whose liability is fixed by statute.
 
 
 33
 Rock Island presents the additional argument that its negligence in failing to inspect the car was not a proximate cause of Kleppe's injury, inasmuch as the negligence of North Western constituted an effective intervening cause, thereby making Rock Island immune from liability. The trial court observed that there is a division of authority on the question of the liability of the delivering carrier to an employee of the receiving carrier, 179 F.Supp. at page 53. See also, Annotation 152 A.L.R. 1313. Recognizing that the Iowa court has not expressly passed upon the contention advanced by Rock Island,[4] Judge Graven appropriately considered the question of proximate cause generally and demonstrated that in Iowa, save in very exceptional cases, the issue of proximate cause is for the jury. See Lindquist v. Des Moines Union Ry. Co., 239 Iowa 356, 30 N.W.2d 120, 123; Jackson v. Chicago, M., St. P. & P. R. Co., supra, 30 N.W.2d at page 101. Therefore, as trier of the facts, Judge Graven found that the negligence of Rock Island was a concurring proximate cause of Kleppe's injury, at page 55 of 179 F.Supp. The competency of Judge Graven to rule upon a question of Iowa law is hardly open to debate, and since Rock Island has not demonstrated to our satisfaction that the trial court misconstrued or misapplied local law, or that its findings of fact are "clearly erroneous", its ruling on this issue must stand. Weiby v. Farmers Mutual Automobile Insurance Co., 8 Cir., 273 F.2d 327, 329, 331.
 
 
 34
 We have also given consideration to Rock Island's final contention that the evidence was legally insufficient to establish actionable negligence on its part. This, like other defenses raised by Rock Island, was fully explored by the trial court. After discussion of the governing principles of law as to finding negligence upon circumstantial evidence, the Court concluded that it could reasonably be inferred that the brake was defective at the time Rock Island delivered the car to North Western, and that the defect was discoverable in the exercise of reasonable care. See page 51 of 179 F.Supp. We are convinced that probative evidence afforded a solid basis for the inference drawn by the trial court, and that its findings in this respect are not clearly erroneous.
 
 
 35
 North Western's appeal brings into focus the action of the trial court denying it indemnity. Relying upon Waylander-Peterson Co. v. Great Northern Ry. Co., 8 Cir., 201 F.2d 408, 37 A.L.R. 2d 1399, North Western insists that under the instant facts, although legally liable, it was guilty of no actual wrong. As pointed out by the trial court, this was found to be true in the Waylander-Peterson case. However, the situation here is entirely different, for the trial court found that control of the defective car had passed from Rock Island to North Western. As previously discussed, this finding was supported by evidence, and is not clearly erroneous. Furthermore, the trial court found that North Western negligently failed in its duty to inspect the car prior to its acceptance. From the record before us, it must be said that both parties were negligent and that their negligence concurred to proximately cause Kleppe's injury and damages. In such a situation, the parties were in pari delicto, and while North Western is entitled to contribution, it is not entitled to indemnity.
 
 The judgment is
 
 36
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 Apparently, there are three separate codes of rules, "Code of Car Service Rules"; "Code of Per Diem Rules" and "Code of Rules Governing the Condition of, and Repairs to, Freight and Passenger Cars." Rule 1(a) of the latter provides:
 "Each railroad is responsible for the condition of all cars on its line, and must give to all equal care as to inspection and lubrication." "Car Service" Rule 7 provides:
 "Cars shall be considered as having been delivered to a connecting railroad when placed upon the track agreed upon and designated as the interchange track for such deliveries, accompanied or preceded by proper data for forwarding and to insure delivery, and accepted by the car inspector of the receiving road.
 "Unless otherwise arranged between the roads concerned the receiving road shall be responsible for the cars, contents and per diem after receipt of the proper data for forwarding and to insure delivery, and until they have been accepted by its inspector or returned to the delivering road."
 
 
 [2]
 In Chicago, Rock Island & Pacific Railroad Co. v. Williams et al., 8 Cir., 245 F.2d 397, certiorari denied 355 U.S. 855, 78 S.Ct. 83, 2 L.Ed.2d 63, an action involving the same parties hereto, Rock Islandsought indemnity or contribution from North Western and Union Pacific Railroad Company, apparently relying upon similar Association Rules. While the facts are dissimilar, this observation 245 F.2d at page 405 is relevant here: "The only agreements between the parties were as to traffic matters such as agreements relating to interchange, per diem, etc. No reference whatsoever is made in such agreements as to indemnity of any kind, let alone for personal injury or indemnification against the consequences of another railroad's negligence."
 
 
 [3]
 In 9 U.L.A. Miscellaneous Act [Uniform Contribution Among Tortfeasors Act], 1959 Supplement, p. 47, it is noted that contribution among joint tortfeasors is now in effect in various degrees, by statute or otherwise, in about one-half of the states. See also, discussion, and cases cited, Zontelli Brothers v. Northern Pacific Railway Co., 8 Cir., 263 F.2d 194, at p. 197
 
 
 [4]
 But see, and compare, Jackson v. Chicago, M., St. P. & P. R. Co., supra, holding initial carrier liable to consignee's employee who was injured by defective door. Apparently, the car had passed through the hands of the shipper and two other railroads, plaintiff and his co-employees had repeatedly pryed at the door with a steel pinch bar, and at the time of the injury, employees were attempting to open the door with a chain and tractor. The court held, 30 N.W.2d at page 101: "We conclude it was for the jury to say whether the defective condition of the car * * * existed before the car left defendant's possessionand caused the door to fall." (Emphasis supplied).