Leo SEMLER, Appellee,

v.

Bill KNOWLING, d/b/a Knowling Bros. Contracting Co., Appellant.

No. 65975.

Supreme Court of Iowa.

Oct. 27, 1982.

R. Scott Barker, Iowa City, for appellant.

Lawrence L. Lynch and Mary K. Hoefer of Sladek & Lynch, Iowa City, for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, HARRIS, McGIVERIN, and LARSON, JJ.

McGIVERIN, Justice.

Plaintiff Leo Semler seeks further review from the court of appeals decision reversing the district court's judgment against defendant Bill Knowling, d/b/a Knowling Bros. Contracting Co., for breach of an implied warranty of fitness for a particular purpose in the installation of a sewer in Coralville, Iowa. Semler sustained damages due to the repeated back up of a cast iron sewer line installed by Knowling, which deposited raw sewage on the basement floor of an apartment building owned by Semler. Knowling cross-petitioned against Frantz Construction Company, the general contractor for the building. The trial court found no liability on the part of Frantz either directly to the plaintiff or to Knowling for indemnity or contribution; Frantz takes no part in this appeal. We transferred Knowling's appeal to the court of appeals. After an adverse decision there, we allowed plaintiff Semler's application for further review. The dispositive issue on this appeal is whether, under the record, the installation of a sewer is covered by an implied warranty of fitness for a particular purpose. We conclude that an implied warranty of fitness for a particular purpose covered the installation and substantial evidence supports the trial court's finding that the warranty was breached by Knowling; thus we vacate the decision of the court of appeals and affirm the judgment of the district court.

Our scope of review in this law action is on assigned error. Iowa R.App. P. 4.

This case began in March of 1968, when Knowling installed a cast iron sewer line in

order to hook up plaintiff's newly constructed apartment building with the main Coralville sanitary sewer. The sewer line was installed by drilling underneath 10th Avenue; because the street was newly paved the City refused permission to cut through it in order to install an excavated sewer. In January of 1969, the sewer backed up and deposited two inches of raw sewage on the basement floor of Semler's apartment building. The problem was corrected by a roto-rooter service, but during the next ten years it reoccurred every three to six months despite plaintiff's preventive maintenance—monthly use of a blow bag and sewer tape. Whenever a professional plumbing service was called in to clean out the line it was apparent that the stoppage was at a point under the street in the cast iron line installed by Knowling.

Although the problems were brought repeatedly to Knowling's attention, he took no steps to repair or replace the line before this lawsuit was filed. His only examination of the line was in 1978, by agreement of counsel and parties, in connection with trial preparation. Knowling could "find nothing wrong" with the cast iron line. Neither were obvious defects in the line found when it was examined in 1970 and again in the spring of 1979, when an excavated, replacement clay tile sewer was installed. Since that time, there has been no reoccurrence of the problems and blockages which had plagued plaintiff with the old line.

While it was clear that the blockage occurred in the cast iron line installed by Knowling, the cause of the blockage remains a mystery. As the trial court stated, "No one knows why the original line didn't work the way it was supposed to. It was properly connected to the main sewer and the clay line at the west edge of plaintiff's property. The joints were correct. The degree of fall was proper. The materials were not proven to be defective. For some unknown reason, the cast iron sewer line just did not work."

I. *Implied warranty.* If the contract for the installation of the sewer had been a construction contract, it would have included a construction contract implied warranty. *Busker v. Sokolowski,* 203 N.W.2d 301, 303 (Iowa 1972) ("[I]t is implied that the building will be erected in a reasonably good and workmanlike manner and will be reasonably fit for the intended purpose.") The installation of the sewer cannot, however, be characterized as part of the construction of Semler's building, and thus covered by the construction contract implied warranty. The purpose of the cast iron line was to give Semler access to the city sewer line; plumbing inside the building was undertaken under the contract between Frantz Construction Co. and plaintiff, and an independent plumbing contractor installed a clay sewer pipe from the building to the point where the cast iron pipe installed by Knowling went under 10th Avenue. Though essential to the completion of Semler's building, plaintiff's petition and the record show that Knowling was hired for a single, particular purpose: to install a working sewer system by a means which did not necessitate cutting the street in order to hook up Semler's building with the City's main sewer line.

 Nonetheless, we find that an implied warranty of fitness for a particular purpose exists in the contract to install the sewer in this case. In so doing, we adopt the following as a summary and extension of the construction contract implied warranty:

Where a contractor agrees to build a structure to be used for a particular purpose, there is an implied agreement on his part that the structure when completed will be serviceable for the purpose intended....

Where the contract contains a guarantee or warranty, express or implied, that the contractor's work will be sufficient for a particular purpose or to accomplish a certain result, unless waived by the owner, the risk of accomplishing such purpose or result is on the contractor, and there is no substantial performance unless the work is sufficient for such purpose or accomplishes such result.

17A C.J.S., *Contracts,* § 494(2)(a), at 715–16 (1963). We find that such an implied warranty of fitness for a particular purpose applies to the installation of the sewer in this case.

In recent years we have recognized the need to narrow the application of the rule "caveat emptor." *Syester v. Banta,* 257 Iowa 613, 616, 133 N.W.2d 666, 668 (1965) ("The old doctrine of caveat emptor is no longer the polestar for business."). In its place we have extended the doctrine of implied warranty. *Farm Bureau Mutual Insurance Co. v. Sandbulte,* 302 N.W.2d 104, 110 (Iowa 1981) (implied warranty that insurance policy later delivered would be reasonably fit for its intended purpose); *Mease v. Fox,* 200 N.W.2d 791 (Iowa 1972) (implied warranty of habitability of leased dwellings); *Meester v. Roose,* 259 Iowa 357, 144 N.W.2d 274 (1966) (implied warranty extended to bailments); *Drager v. Carlson Hybrid Corn Co., Inc.,* 244 Iowa 78, 56 N.W.2d 18 (1952) (implied warranty corn fit for seed); *but cf., Gosha v. Woller,* 288 N.W.2d 329 (Iowa 1980) (refusal to apply implied warranty of habitability in sale of new home since defendants had no notice that the theory might be in the case when that theory was not a part of established law).

The policy reasons for extending the application of implied warranties to contracts such as the one between Semler and Knowling are compelling:

(1) the consumer generally has inferior knowledge concerning sewers and their installation which makes the consumer reliant upon the contractor;

(2) in today's world of indoor plumbing, the consumer cannot avoid utilizing a sewer system;

(3) the sewer contractor subjects himself to liability by engaging in the business of installing sewers; and

(4) as in this case, it can be extremely difficult to prove negligence after the injury has occurred.

Adapted from Note, *Contracts for Goods and Services and Article 2 of the Uniform Commercial Code,* 9 Rut.-Cam.L.J. 303, 319 (1978).

We believe that implied warranty relief is not limited to chattel sales, but is available to resolve longstanding inequities in other areas of the law. *See C & J Fertilizer v. Allied Mutual Insurance Co.,* 227 N.W.2d 169, 179 (Iowa 1975). Semler had to have a working sewer. The City of Coralville said it had to be a sewer which could be hooked up to its main line without cutting through the newly paved street. Semler had to rely on Knowling, a sewer contractor, to install such a sewer line. A consumer in the position of Semler should be afforded the same protections as a purchaser of goods or insurance, or a lessee of dwellings.

■ II. *The non-applicability of the Uniform Commercial Code.* The extension of the implied warranty doctrine does not catapult contracts for the installation of sewers into the ambit of Article 2 of the Uniform Commercial Code (UCC). This clearly was not a contract for the sale of goods. It was a mixed contract for goods— the sewer pipes and fittings—and services—the installation. We have adopted the "goods supplied" approach[1] for testing

---

1. The goods supplied approach was articulated in *Bonebrake v. Cox,* 499 F.2d 951 (8th Cir. 1974), in which the Eighth Circuit applied Iowa law to a contract requiring plaintiff's decedent to supply and install used bowling alley equipment.

> The test for inclusion or exclusion [under Article 2] is not whether they are mixed, but, granting that they are mixed, whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved (e.g., contract with artist for painting) or is a transaction of sale, with labor incidentally

involved (e.g., installation of a water heater in a bathroom).

Id. at 960 (footnotes omitted).

In applying this test to the present case we find that the contract was one for services in which goods were incidentally involved. Contrast the Semler-Knowling contract with one for the installation of a water heater. The discriminating consumer of the latter has specific expectations about the water heater: Is it a forty or a twenty gallon water heater? Is it gas or electric? Is it energy efficient? The installation of the particular water heater which will meet the consumer's expectations is

such mixed contracts. *M & W Farm Service Co. v. Callison,* 285 N.W.2d 271, 275 (Iowa 1979). We find this to be predominantly a contract for services and therefore not within the ambit of Article 2.

Exclusion from Article 2, however, does not foreclose the application of its policies and reasons. "[Courts] have recognized the policies embodied in an act as applicable in reason to subject-matter which was not expressly included in the language of the act . . . . Nothing in this Act stands in the way of the continuance of such action by the courts." Iowa Code Annotated § 554.-1102 comment 1 (1981). *See Sandbulte,* 302 N.W.2d at 110 (adoption of implied warranty in insurance contracts was by analogy to implied warranty in the sale of tangible goods).

■ III. *Elements for recovery.* The following elements for recovery must be present under the theory of implied warranty of fitness for a particular purpose:

(1) the seller must have reason to know the consumer's particular purpose;[2]

(2) the installation contractor must have reason to know that the consumer is relying on his skill or judgment to furnish appropriate installation services; and

(3) the consumer must, in fact, rely upon the installer's skill or judgment.

*See Id.;* Iowa Code § 554.2315 (1981). Whether such a warranty arises is usually a question of fact determined from the circumstances of the parties' negotiations. *Sandbulte,* 302 N.W.2d at 110. Substantial evidence, supporting the trial court's judgment, shows that since Knowling's work failed to accomplish the particular purpose for which it was contracted, there was no substantial performance and Knowling must bear the liability. It is not necessary for plaintiff to prove the specific defect

---

incidental. On the other hand, Semler hired Knowling for his services, specifically those services necessary to install a working sewer without cutting the street. His expectations did not focus on the pipe and fittings which were used—those were incidental to the installation service.

---

which caused the sewer to malfunction. The "defect" was the failure of the installation to perform the particular purpose. *See* J. White and R. Summers, *Handbook of the Law Under the Uniform Commercial Code,* § 9–9 at p. 358 (2d ed. 1980).

■ IV. *Damages.* Knowling contends the court used the wrong measure of damages in its award to Semler. However, neither the evidence, the amount nor the method of calculating damages were challenged or objected to during trial in any reported record, in defendant's trial brief or in a motion to enlarge or amend findings of fact or conclusions of law under Iowa R.Civ.P. 179(b). In oral argument on appeal, defendant conceded that in the district court the case was tried on an "all or nothing" basis as to damages. Since defendant first raises his objections relative to the measure and computation of damages on appeal, we are precluded from considering them. "If defendant['s] [attorney] wanted that issue decided, it was [his] duty to raise it in the trial court. * * * [W]e are a court of review and will not consider a contention raised for the first time in this court." *Katko v. Briney,* 183 N.W.2d 657, 662 (Iowa 1971) (citations omitted). Since the damage issue was not preserved for appeal, we have nothing to review in that regard.

V. *Res ipsa loquitur.* Res ipsa loquitur was pleaded by the plaintiff and was found to be an alternate theory of liability by the trial court. Because we conclude the trial court's judgment is supported by the implied warranty theory, we need not consider the parties' contentions concerning the applicability of res ipsa loquitur to the present factual situation. For a discussion concerning compatibility of the theories of res ipsa loquitur and breach of implied warranty in the same factual context, see *State Farm*

---

**2.** To give rise to an implied warranty the contract must respond to a particular need of the consumer, not just to general purposes. *See Jacobson v. Benson Motors, Inc.,* 216 N.W.2d 396, 403–404 (Iowa 1974). In the present case the method of installation used was intended to meet Semler's peculiar needs—a working hook-up with the main sewer line without cutting through the new paving.

*Mutual Automobile Insurance Co. v. Anderson-Weber, Inc.,* 252 Iowa 1289, 1294–95, 110 N.W.2d 449, 452 (1961).

Our consideration of all of Knowling's reviewable contentions on appeal reveals no reversible error. We vacate the decision of the court of appeals and affirm the judgment of the district court.

DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED.