**CHICAGO CENTRAL & PACIFIC RAILROAD COMPANY, Appellee,**

v.

**UNION PACIFIC RAILROAD COMPANY, Appellant.**

**No. 95–1426.**

Supreme Court of Iowa.

Feb. 19, 1997.

Joseph G. Van Winkle of Lewis, Webster, Johnson, Van Winkle & De Volder, Des Moines, and Raymond J. Hasiak, Omaha, NE, for appellant.

Edward J. Krug of Lynch, Dallas, Smith & Harman, P.C., Cedar Rapids, for appellee.

Considered by HARRIS, P.J., and CARTER, LAVORATO, SNELL, and TERNUS, JJ.

HARRIS, Justice.

This suit stems from a freight train derailment that occurred near Williams, Iowa, in December 1990. Two railroad companies dispute, on numerous theories, whether one of them should compensate the other for various items of damage stemming from the derailment. We affirm in part and reverse in part and remand on the appeal, and affirm on the cross-appeal.

A "truck bolster" is a solid steel casting that forms a part of the framework upon which a railroad car rests as it travels on the rails. The failure of one such bolster caused this derailment and the ensuing litigation. The truck bolster had been manufactured by Buckeye Steel Castings Co. (Buckeye), sold to defendant Union Pacific Railroad (Union), and installed in one of Union's "bathtub gondola" coal cars. At the time of the derailment, this Union-owned rail car was being operated by plaintiff Chicago Central & Pacific Railroad Company (Chicago) and carrying coal pursuant to a three-party contract between Chicago, Union, and Commonwealth Edison (Commonwealth). The coal was to be transported from where it was mined in Wyoming, over Union's and then Chicago's lines, for delivery to Commonwealth's generating station in Joliet, Illinois. The rail lines are subject to the interchange rules of the American Association of Railroads (AAR rules).

The derailment caused substantial damage to the two railroads' property and to the property of others. In accordance with the AAR rules, Chicago computed and paid $86,-727.30 to Union on March 26, 1991, for destroyed railroad cars owned by Union, and billed and paid itself $77,997.29 for repairs it made to cars owned by third parties. Chicago also paid, among other things, $63,150.36 to Commonwealth for the loss of coal being shipped.

On August 21, 1992, Chicago filed suit against Buckeye seeking to hold it liable for damage to Chicago's tracks, damage to the property of adjoining landowners, and damage to and destruction of railroad cars. Chicago's claims against Buckeye included products liability theories, strict liability, and negligence. On September 27, 1993, Chicago filed an amended petition adding Union as a defendant. Chicago's theories against Union included warranties of merchantability and fitness, strict liability, negligence, and indemnity under the Chicago/Union/Commonwealth coal shipment contract. Buckeye settled with Chicago before trial.

A number of disputed issues in the suit against Union were withdrawn by pretrial and trial rulings. The case was eventually submitted to a jury on Chicago's claims under theories of contractual indemnity, breach of warranty of the cars' fitness, and negligence. The trial court very prudently submitted the case by way of special verdicts so we have the benefit of the jury's answers to specific questions relating to liability and damage.

The jury found Union breached the contract of indemnity. On the negligence and warranty-of-fitness claims, the jury found Chicago was not at fault for the train derailment, that Buckeye was fifty-five percent at fault and Union was forty-five percent at fault. The jury also found various dollar values for items of claimed damages. It found damage to the adjacent landowner's property was $4500. The damage to railroad cars owned by parties other than Union was $26,166.55. The value of destroyed railroad

cars owned by parties other than Union was $27,116.82. Damage to railroad cars owned by Union was $51,830.74. Destroyed railroad cars owned by Union were valued at $83,127.30. Damage to Chicago's railroad tracks totaled $9182.81. The cost of cleanup at the derailment site was $59,419.45. The value of the coal destroyed and lost in the derailment was $57,679.08.

The trial court concluded the jury's damages finding for lost and damaged coal, totaling $57,679.08, were not recoverable under Chicago's contractual indemnity claim. The court did allow Chicago to recover for damages to the adjacent property owner's land, and for the damaged and destroyed railroad cars owned by the lines other than Union ($57,833.37). The court then held Chicago could recover forty-five percent of the $68,602.26 for damage to its own railroad track and property ($30,871.01). The court, reversing an earlier ruling, held that Chicago could recover forty-five percent of the $134,958.04 it had paid to Union for damage to or destruction of Union's railroad cars pursuant to the AAR rules ($60,731.12). The total judgment entered against Union was $149,435.50.

Union then appealed and Chicago cross-appealed.

Union claims the one-year statute of limitations for contribution in Iowa Code section 668.6 (1993) bars Chicago from recovering the damages for payments Chicago made to Union for Union-owned railroad cars damaged in the derailment. Union also claims the district court erred in determining that an implied warranty of fitness could arise from the interchange of rail cars between Union and Chicago. Union further argues that the AAR rules prevent Chicago from recovering any payments it made to Union for damage to Union-owned railroad cars while on Chicago's rail lines.

On cross-appeal Chicago argues it should recover the entire $134,958.04 it paid to Union for damage and destruction of Union's railroad cars pursuant to the AAR rules, rather than only $60,731.12 (forty-five per-

cent of the total paid) awarded by the district court. Chicago also claims it is entitled to damages for the coal lost in the derailment.

■ I. This case was tried as a law action to a jury, so our scope of review is for correction of errors. Iowa R.App. P. 4. The facts found by the jury are binding on appeal if supported by substantial evidence. Iowa R.App. P. 14(f)(1). We are not bound by the district court's application of legal principles or conclusions of law. *Power Eng'g & Mfg., Ltd. v. Krug Int'l*, 501 N.W.2d 490, 493 (Iowa 1993).

II. We first address Union's contention that Chicago could not sue Union based on the breach of an implied warranty of fitness for a particular purpose. This claim requires us to determine if the interchange of the Union-owned rail car to Chicago for operation on Chicago's rail line could create an implied warranty of fitness. We think, under the facts of this case, there was such a warranty.

■ Under Iowa law there are both statutory and common-law implied warranties of fitness for a particular purpose.[1] Iowa Code section 554.13213 (1995) is the U.C.C. warranty of fitness for leases, but this section did not become law until 1994. 1994 Iowa Acts ch. 1052, § 26. Union was made a party to this suit in 1993, prior to the effective date of this section. We need not decide whether this section was retroactive. As will appear, we resolve the case on the basis of a common-law warranty of fitness, the statute need not—and is not—a factor in our decision.

■ A bailment can create a common-law implied warranty of fitness. *Meester v. Roose*, 259 Iowa 357, 359–60, 144 N.W.2d 274, 275–76 (1966); *Morris Plan Leasing Co. v. Bingham Feed & Grain Co.*, 259 Iowa 404, 417, 143 N.W.2d 404, 413 (1966). Our cases recognize, as a matter of common law, an implied warranty of fitness. In *Morris Plan* we held the bailor of a chattel is subject to an implied warranty of fitness. 259 Iowa at 417,

---

1. *See* Iowa Code § 554.2315 (1995); *id.* § 554.13213; *Berhow v. Kroack*, 195 N.W.2d 379, 381 (Iowa 1972); *Meester v. Roose*, 259 Iowa 357, 359–60, 144 N.W.2d 274, 275–76 (1966); *Morris Plan Leasing Co. v. Bingham Feed & Grain Co.*, 259 Iowa 404, 417, 143 N.W.2d 404, 413 (1966).

143 N.W.2d at 413. In so doing we stated: "One who lets property for hire may reasonably be subjected to the same implied warranties as one who sells goods." *Id.* at 418, 143 N.W.2d at 413 (citing 4 *Williston on Contracts* § 1041 (revised ed. 19—)). A commercial lessor is plainly "one who lets property for hire," so a common-law implied warranty of fitness can arise in matters involving commercial leases.

We find further support for this view in *Semler v. Knowling*, 325 N.W.2d 395, 399 (Iowa 1982). In *Semler* we explained that a transaction's exclusion from article II of the U.C.C. (governing sales) does not prevent us from applying the policies embodied in article II to that transaction.

> "[C]ourts recognize the policies embodied in an act as applicable in reason to subject-matter which was not expressly included in the language of the act. . . . Nothing in this Act stands in the way of continuance of such action by the courts."

*Id.* (quoting Iowa Code Ann. § 554.1102 cmt. 1 (1981)). Also, as recognized in *Semler*, we have previously extended the doctrine of implied warranties beyond the confines of sales under U.C.C. article II when the reasoning of article II applied to the transaction.[2]

█ Chicago submitted evidence from which the jury could find the elements of Union's breach of the implied warranty of fitness. Union knew the particular purposes Chicago intended for the rail car was to haul coal. Union knew Chicago was relying on Union's skill in furnishing the car to haul coal. Chicago relied upon Union's skill to provide a rail car that was up to the task of hauling coal. Thus we reject Union's first assignment of error.

III. The most hotly disputed question is whether Chicago can recover amounts it previously paid to Union for damage to Union's railroad cars. The AAR rules, the three-party-coal-shipment contract, and the statute of limitations for contribution claims in Iowa Code section 668.6 must be considered in deciding the question.

We first address Union's claim that the one-year statute of limitations in Code section 668.6(3) bars Chicago's recovery of amounts previously paid to Union.[3] As mentioned, the trial court allowed Chicago to recover compensation from Union on a negligence theory for the amount it paid under AAR rule 95, explaining these damages "were in the nature of restitution as opposed to contribution or indemnity." If, as Union claims, these damages were in fact for contribution, they were barred by section 668.6(3). But we think Chicago's claim against Union for expenses in restoring Union's rail cars falls outside any accepted definition of contribution.

█ Our common-law definition was rooted in joint liability:

> Contribution rests on common liability, not on joint negligence or joint tort. Common liability exists when two or more actors are liable to an injured party for the same damages, even though their liability may rest on different grounds.

2. *Semler*, 325 N.W.2d at 398 (citing *Farm Bureau Mut. Ins. Co. v. Sandbulte*, 302 N.W.2d 104, 110 (Iowa 1981) (implied warranty that insurance policy later delivered would be reasonably fit for its intended purpose); *Mease v. Fox*, 200 N.W.2d 791 (Iowa 1972) (implied warranty of habitability of leased dwellings); *Meester*, 259 Iowa at 359–60, 144 N.W.2d at 275–76 (implied warranty extended to bailment); *Syester v. Banta*, 257 Iowa 613, 616, 133 N.W.2d 666, 668 (1965) ("The old doctrine of caveat emptor is no longer the polestar for business."); *Drager v. Carlson Hybrid Corn Co.*, 244 Iowa 78, 56 N.W.2d 18 (1952) (implied warranty of corn fit for seed)).

3. Iowa Code § 668.6(3) provides:

> 3. If a judgment has been rendered, an action for contribution must be commenced within one year after the judgment becomes final. If a judgment has not been rendered, a claim for contribution is enforceable only upon satisfaction of one of the following sets of conditions:
>
> a. The person bringing the action for contribution must have discharged the liability of the person from whom contribution is sought by payment made within the period of the statute of limitations applicable to the claimant's right of action and must have commenced the action for contribution within one year after the date of that payment.
>
> b. The person seeking contribution must have agreed while the action of the claimant was pending to discharge the liability of the person from whom contribution is sought and within one year after the date of the agreement must have discharged that liability and commenced the action for contribution.

*Federated Mut. Implement & Hardware Ins. Co. v. Dunkelberger,* 172 N.W.2d 137, 142 (Iowa 1969). Under Iowa Code section 668.5 a "right of contribution exists between or among two or more persons who are liable upon the same indivisible claim for the same injury, death, or harm, whether or not judgment has been recovered against all or any of them." The common liability criterion was unaffected by enactment of this statutory definition. *Allied Mut. Ins. Co. v. State,* 473 N.W.2d 24, 26–27 (Iowa 1991).

■ Here there is no joint liability between Union and Chicago because the jury determined Chicago was not at fault for the derailment. Union's efforts to characterize Chicago's fault claim as akin to one for contribution must therefore fail. Hence it is not subject to the one-year statute of limitations in Code section 668.6, but rather to the five-year limitation for claims of injury to property in Code section 614.1(4). Because Chicago's claim for recovery of payments it made to Union is not time barred, it must be considered on its merits.

It is agreed that both railroads are bound to abide by the AAR rules. These rules govern countless questions that arise in interchange, that is, when cars belonging to one rail line are transported across and thus "handled" by another line. AAR rule 95 renders the handling line responsible for damages caused by a derailment when the car causing the derailment is the handler's possession.[4] It is clear this rule obligates a handling railroad to promptly pay the owning line for all damages incident to restoring damaged and destroyed cars. As mentioned, Chicago, the handling railroad at the time of derailment, did promptly pay the owners of the damaged and destroyed rail cars, including Union.

■ What is hotly disputed is whether this obligation under AAR rule 95 is tantamount to an insuring agreement. For reasons we shall explain, we think the answer, as it relates to the damaged and destroyed rail cars, is yes. The parties cite essentially the same cases but read them differently.

In *Fluor Engineers & Constructors, Inc. v. Southern Pacific Transportation Co.,* 753 F.2d 444 (5th Cir.1985), a backhoe was negligently loaded on a rail car, causing a train derailment. 753 F.2d at 446–47. The handling line, Southern Pacific, sued the Norfolk & Western Railroad for negligence in instructing Southern Pacific on how to load the backhoe onto the rail car. Southern Pacific sought damages for amounts it had paid to other rail car owners, derailment clean-up costs, and property damage to a railroad bridge. In allowing Southern Pacific to recover these damages, the court explained why the AAR rules and its arbitration provisions did not bar recovery.

As we read the Interchange Rules and the arbitration decisions of the AAR's Mechanical Division, the proceedings that determined responsibility for train car damages determined that the Southern Pacific was responsible for train car damage only as against the owners of the damaged cars. If the Norfolk & Western flatcar that caused the derailment had been damaged in the accident, for example, the Southern Pacific as handling carrier would have been irrevocably bound by the arbitrator's decision to pay for those damages, just as it was bound to pay the owners of other cars damage in the derailment for their losses. *The Interchange Rules and arbitration decision simply do not address indemnity claims for such damages against third parties, even where the third party is a member railroad.* Thus the Southern Pacific was entitled to sue the Norfolk & Western for the damages it paid to the owners of the train cars damaged in the derailment.

. . . .

[W]e think the rules and arbitration procedures have no effect on responsibility for

---

**4.** AAR rule 95 provides in relevant part:

RULE 95—HANDLING AND/OR DELIVERY LINE RESPONSIBILITY.
A. HANDLING LINE—AT ANY TIME.
1. All Cars.

a. Damage or loss to any car, regardless of extent unless otherwise stated in this section, resulting from unfair usage conditions outlined below.

. . . .
(6) Derailment.

damages to the railroad bridge and costs of cleanup. *Id.* at 452 (emphasis added).

In *Chicago, Rock Island & Pacific Railroad Co. v. Chicago & North Western Railway Co.*, 280 F.2d 110 (8th Cir.1960), a Chicago North Western employee was injured while attempting to release a defective hand brake on a Chicago Rock Island-owned rail car. 280 F.2d at 112. After settling with the employee, Chicago North Western sued Chicago Rock Island for contribution or indemnity. *Id.* at 112. The court held the AAR rules then in existence[5] did not bar a handling railroad from asserting a contribution or indemnity claim against the rail car owner for the owner's alleged negligence in causing a personal injury to the handling railroad's employee. *Id.* at 113–14.

In *Torres v. Southern Pacific Transportation Co.*, 584 F.2d 900 (9th Cir.1978), two plaintiffs boarded a freight car and were injured when the train derailed because of a cement hopper malfunction. 584 F.2d at 901. The court upheld summary judgment for the owner of the cement hopper because the owner had followed the AAR maintenance standards and could not have detected the malfunction prior to interchanging the rail car. *Id.* at 902. The court also applied Arizona law in refusing to allow the plaintiffs to sue based on strict products liability. *Id.*

In *Pierce v. Burlington Northern Railroad Co.*, 684 F.Supp. 997 (C.D.Ill.1987), the plaintiff was injured when a train derailment caused rail cars to strike his pickup truck that was stopped at a rail crossing. 684 F.Supp. at 997–98. The operating railroad brought a claim for contribution and damages for the negligence of the owner of the rail car that caused the derailment. After conceding that "[i]t is difficult to ascertain the exact application" of the AAR rules, the court held the AAR rules did not bar a contribution claim involving personal injuries to a bystander and damage to the property of the operating railroad. *Id.* at 998–99, 1002.

Chicago contends AAR rule 95 merely raises an "up front" responsibility to repair, restore or pay to replace the cars, and does not go so far as to supplant or abrogate existing common-law rights of recovery. We however think the sound rule emerging from the cited cases, and as we think is clear from the testimony of Chicago's superintendent of cars, J.B. Rubino,[6] is that the handling railway is indeed an insurer to the owner line for the owner's cars while being "handled" on the handler's line.

Although AAR rule 95 makes the handling line an insurer for damage to the rail cars being handled on its line, the AAR rules are quite limited in scope. The foregoing cases limit the scope of the handling line's responsibility to damage to the owner's rail cars. Common-law responsibility for personal injuries and for damage to others resulting from the derailment are not affected by the AAR rules. Thus under AAR rule 95 Chicago is not entitled to recover the payments it made to Union for damage and destruction of Union-owned rail cars.

The parties' rights and obligations under the AAR rules do not conclude the dispute because the parties are free to contract further, abrogating or extending their rights and obligations. Indeed AAR rule A(1)(e) specifies that private contractual

---

**5.** The AAR rules in *Chicago Rock Island* were worded somewhat differently from the AAR rules in this case. *See id.* at 112–13. Under our analysis in resolving the present case, it is unnecessary to determine whether these changes in any way altered the obligations of participating rail lines.

**6.** Rubino made the following statement in his affidavit.

Payments made by [Chicago] to the owners of the cars [damaged or destroyed in the derailment] were made in accordance with the mandate of and formulas established in the field manual of the interchange rules adopted by the Association of American Railroads, 1990 ("AAR rule").

. . . .

Pursuant to the AAR rules, [Chicago], as the handling or operating carrier in possession of the cars at the time of the loss, was responsible for payment of damages or loss to any car damaged in the derailment. *See* [AAR] rule 95A.1.

. . . .

Under the AAR rules, [Chicago] had no discretion to vary the AAR rules formula or to deny the payments. The AAR rules mandated payment in the amounts made by [Chicago]. *See* [AAR] rule 95A.1.

rights of the parties are unaffected by the AAR rules.[7]

■ It is claimed the three-party coal shipment contract between Chicago, Union, and Commonwealth gave Chicago a separate right of indemnity. We think the language of the indemnity agreement in the coal contract, contrary to Chicago's contention—and the trial court's ruling—does not encompass Union's rail cars.

The coal contract provided the following indemnity agreement.

Each party shall indemnify, defend and hold the other parties harmless from and against any and all expense, cost and liability for damage to property or injury to or death of *any person or persons* arising out of or resulting from the willful acts or negligence of such party, its agents and employees.

(Emphasis added.)

The question becomes whether the term "any person or persons" includes the three parties to the contract. The matter is not free from doubt; focusing on the word "any," the term can certainly be considered expansive. But, focusing on the word "person" (with no mention of a contracting "party"), the term could be understood to describe only strangers to the contract.

In reading the contract as a whole, we hold the indemnity clause covers only damages to persons not a party to the contract. This means that under the indemnity clause Chicago could recover for damages it paid to third parties injured, such as payments made for damaged and destroyed rail cars owned by other lines and damages to a farmer's derailment-related injury to his field, but not for damages suffered by the parties to the contract, Chicago, Union and Commonwealth.

The coal contract therefore does not modify the duty of Chicago under AAR rule 95 to pay Union for damage and destruction of Union-owned rail cars. Thus Chicago cannot recover for amounts it paid to Union under those rules. This conclusion requires reduction of the trial court judgment by $60,-731.12, which represents damages for Chicago's payments to Union pursuant to the AAR rules.

IV. Turning to the cross-appeal, we have already resolved Chicago's first contention (that it should recover the full amount it paid to Union for damages and destruction of Union-owned rail cars) by holding that Chicago is not entitled to any recovery of these payments.

■ Chicago's second claim is that it should be able to recover from Union for the coal lost and damaged in the derailment. The trial court held that the coal contract placed the risk of loss for damaged and lost coal on the party in possession of the coal at the time of the loss, in this case Chicago. The coal contract provides in relevant part:

Railroads shall be liable for any Coal loss or damage (including contamination or degradation) while Coal is in their possession, except that Railroads shall not be liable for loss of Coal caused by negligence of Shipper or its agent.

"Shipper" is defined in the coal contract as Commonwealth.

We think the trial court correctly interpreted this clause as an assignment of the risk of coal loss or damage to the railroad in possession of the coal. Here Chicago was in possession at the time of the derailment and thus assumed all risk for lost or damaged coal. We thus reject Chicago's contentions on the cross-appeal.

V. What we have said renders various contentions moot. Union claims the trial court erred in refusing to order arbitration under the AAR rules. However, assuming Union had a right to arbitration,[8] the arbitration would have concerned only the amount of damage sustained by Union-owned rail cars. Because we hold that Chicago cannot

---

7. AAR rule A(1)(e) provides:
    1. These rules are formulated ... with the intent of:
    . . . .
      e. Establishing that rules contained herein are not intended to cover other independent agreements, entered into by parties concerned.

Nothing in these rules shall interfere with the right of any subscriber to enter into an independent agreement with any other subscriber.

8. We express no view on whether Union had a right to arbitration under the AAR rules.

recover for these damages, this claim is moot.

Challenged evidentiary rulings either were within the trial court's discretion or rendered moot by reason of our disposition.

The case must be remanded for an order reducing Chicago's judgment by $60,731.12.

**AFFIRMED IN PART AND REVERSED IN PART ON APPEAL; AFFIRMED ON CROSS–APPEAL.**