**Robert T. GOEBEL, Plaintiff,**

v.

**DEAN & ASSOCIATES, James D. Norton d/b/a Norton Print Systems, and Goss Graphics Systems, Inc., Defendants.**

**No. C 97–4082–MWB.**

United States District Court,
N.D. Iowa,
Western Division.

March 10, 2000.

 

*Trust in the Judgment of Public Officials*, 32 Buff.L.Rev. 175, 208–09 (1983).

Timm W. Reid, Richard H. Doyle, Galligan, Tully, Doyle, & Reid, P.C., Des Moines, IA, for plaintiff Robert T. Goebel.

Daniel L. Hartnett, Crary, Huff, Inkster, Sheehan, Ringgenberg, Hartnett, Storm & Jensen, P.C., Sioux City, IA, for defendant Dean & Associates.

Richard G. Book, Huber, Book, Corese, Happe & Brown, P.L.C., Des Moines, IA, for defendant James D. Norton.

Michael R. Hellige, Kathleen Roe, Hellige, Lundberg, Meis, Erickson & Frey, Sioux City, IA, for defendant Goss Graphics Systems.

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT DEAN'S MOTION FOR SUMMARY JUDGMENT

BENNETT, Chief Judge.

### TABLE OF CONTENTS

I. INTRODUCTION ............................................ 1271
   A. Procedural Background ............................... 1271
   B. Factual Background .................................. 1271
II. LEGAL ANALYSIS ......................................... 1272
   A. Standards For Summary Judgment ..................... 1272
   B. Dean's Potential Liability To Goebel ................. 1273
     1. The parties' contentions .......................... 1274
     2. The "general rule" and exceptions to it ........... 1274
     3. Applicability of exceptions here .................. 1275
       a. "Own negligence" ............................. 1275
         i. RESTATEMENT (SECOND) OF TORTS § 414 ....... 1275
         ii. RESTATEMENT (SECOND) OF TORTS § 412 ....... 1276
         iii. Source of the preconditional duty ........... 1277
         iv. The duty in this case ...................... 1278
         v. Scope of Dean's "own negligence." ........... 1280
         vi. Summary ................................... 1281
       b. Non-delegable duty ........................... 1281
         i. The Giarratona decision ................... 1281
         ii. Application of the rule in Giarratona ...... 1282
   C. Dean's Liability to Goss ............................ 1283
     1. Contribution based on Dean's negligence ........... 1283
     2. Authority for a contribution claim ................ 1284
       a. Contractual right ............................ 1284
       b. Common-law and statutory authority .......... 1284
III. CONCLUSION ............................................ 1287

Who can be held liable for injuries to a printing press operator who claims that he was injured in a fall from a printing press caused by the collapse of an access step? The injured press operator has brought this lawsuit asserting the liability of the company that sold the printing press to his employer and agreed to provide "turnkey" installation, the subcontractor hired by the seller of the press to install the press, and the subcontractor's subcontractor, who did the actual mechanical installation of the press. On a motion for summary judgment, the subcontractor contends that, whoever else may be liable to the injured press operator, it isn't. The subcontractor cites the "general rule" of RESTATEMENT (SECOND) OF TORTS § 409 that an employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants, claiming that, under this rule, it cannot be liable for any negligence of its subcontractor. The subcontractor has also moved for summary judgment on the seller's cross-claim for indemnity and contribution. The injured press operator, the seller of the press, and the subcontractor's subcontractor have all resisted the subcontractor's motion, arguing that exceptions

to the general rule establish a basis for the subcontractor's liability in this case. The seller also contests the subcontractor's assertion that there is no basis for the seller's indemnity and contribution claim.

## I. INTRODUCTION

### A. Procedural Background

Plaintiff Robert T. Goebel filed this lawsuit on June 23, 1997, on the basis of diversity jurisdiction, asserting claims under Iowa law against defendants Goss Graphics Systems, Inc., described above as the "seller," Dean & Associates, described above as the "subcontractor," and James D. Norton d/b/a Norton Print Systems, described above as the "subcontractor's subcontractor." In this lawsuit, Mr. Goebel seeks to recover for personal injuries he suffered on June 14, 1996, in a fall from a printing press during his employment at Heartland Press, Inc., in Spencer, Iowa. Mr. Goebel alleges that his fall was caused by the collapse of a metal access step attached to the printing press. He seeks to hold the defendants—as the seller and/or installers of the press—liable for the collapse of the step and his resulting injuries on various theories.

Mr. Goebel's operative pleading is his Third Amended Complaint, filed April 27, 1998. That pleading is in three divisions, each division asserting claims against one of the defendants. Division I alleges that Dean, the "subcontractor," was negligent in the following respects: failing properly to secure the metal access step to the printing press; failing to exercise reasonable care in the assembly and installation of the metal access step connected to the printing press; failing to conduct a proper inspection of work performed; failing to choose and incorporate proper materials into the assembly and installation of the printing press and its attached metal access step; and other unspecified acts. Mr. Goebel alleges that Dean's negligence was the proximate cause of his injuries. Division II asserts a comparable negligence claim against Norton, while Division III asserts claims of strict liability, negligence, and breach of implied warranty against Goss.

This matter comes before the court pursuant to defendant Dean's August 9, 1999, motion for summary judgment on Mr. Goebel's negligence claim against Dean and Goss's cross-claim against Dean. Defendant Norton resisted the motion on August 26, 1999, but did not file a brief in support of its resistance at that time. The disposition of the motion was then delayed by the automatic stay in bankruptcy occasioned by defendant Goss's bankruptcy petition. That stay has since been lifted upon notice by Goss of completion of its reorganization. Defendant Goss resisted Dean's motion on December 28, 1999. Plaintiff Goebel joined in Goss's resistance on January 6, 2000. Defendant Norton filed a brief in support of its prior resistance to Dean's motion for summary judgment on January 7, 2000. Dean then filed a reply brief in further support of its motion for summary judgment on February 24, 2000.

The court heard oral arguments on Dean's motion for summary judgment on February 28, 2000. Plaintiff Robert T. Goebel was represented by Timm W. Reid and Richard H. Doyle of Galligan, Tully, Doyle, & Reid, P.C., in Des Moines, Iowa. Defendant Dean & Associates was represented by Daniel L. Hartnett of Crary, Huff, Inkster, Sheehan, Ringgenberg, Hartnett, Storm & Jensen, P.C., in Sioux City, Iowa. Defendant James D. Norton was represented by Richard G. Book of Huber, Book, Corese, Happe & Brown, P.L.C., in Des Moines, Iowa. Defendant Goss Graphics Systems was represented by Michael R. Hellige and Kathleen Roe of Hellige, Lundberg, Meis, Erickson & Frey of Sioux City, Iowa.

### B. Factual Background

The court will discuss here only the nucleus of undisputed facts pertinent to the present motion for summary judgment.

In its legal analysis, the court will address, where necessary, the parties' assertions of genuine issues of material fact that may preclude summary judgment in Dean's favor on Mr. Goebel's negligence claim and Goss's cross-claim for indemnity and contribution.

In his Third Amended Complaint, Mr. Goebel alleges that, on or about June 14, 1996, while he was employed as a printer at Heartland Press, Inc., in Spencer, Iowa, a metal access step attached to the printing press he was operating collapsed beneath him, causing him to fall, resulting in severe and permanent injuries to his knee, leg, hip, and other parts of his body, as well as loss of wages, use of his full body, and future earning capacity, and causing permanent scarring and disfigurement. The nature, extent, and indeed the cause of Mr. Goebel's injuries are not at issue on the present motion for summary judgment: For the purposes of summary judgment only, the parties assume that Mr. Goebel will be able to prove that, when the press was turned over to Heartland Press, the bolts that should have secured the access step were improperly secured or missing, not that the bolts were loosened or removed by some other person at some time thereafter. What *is* at issue is the question of the legal basis for claims against defendant Dean. Therefore, the court turns to the relationship among Heartland Press, Goss, Dean, and Norton, as the owner of the printing press from which Mr. Goebel fell and the parties allegedly responsible for negligently installing the printing press.

The printing press from which Mr. Goebel fell was sold to Heartland Press by Goss Graphics late in 1995 for $3,830,000. The press is approximately 100 feet long and consists of eight separate units, each weighing several tons. For an additional $615,000, Goss also agreed to install the press and make it operational, a so-called "turnkey" installation. The parties agree that the installation of the press would have included installation of the access steps and step covers.

Goss then entered into a subcontract with Dean & Associates ·for much of the installation work. Rodney Dean is the sole owner and only employee of Dean & Associates. Dean agreed to do the rigging and erection, process piping, and electrical wiring for the press for $266,000. Dean then hired three subcontractors to do the mechanical installation, electrical work, and pipe fitting, respectively. Dean hired Norton as the subcontractor for the mechanical installation, which the parties apparently agree would have included installation of the access steps and step covers.

Installation of the press began in January of 1996 and was completed in May of 1996. During that time, Rodney Dean was on the jobsite only once or twice. Actual supervision of the installation process was provided by representatives of Goss Graphics. The parties apparently agree that the persons responsible for installing the press and bringing it into production would have stepped on the access step from which Mr. Goebel later fell numerous times during the installation process, but no one who used the step during installation noted that it was loose or improperly installed.

On June 14, 1996, approximately six weeks after the press first came on line, Mr. Goebel suffered his fall from the access step.

## II. LEGAL ANALYSIS

### A. Standards For Summary Judgment

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to FED. R.CIV.P. 56 in a number of prior decisions. *See, e.g., Swanson v. Van Otterloo*, 993 F.Supp. 1224, 1230–31 (N.D.Iowa 1998); *Dirks v. J.C. Robinson Seed Co.*, 980 F.Supp. 1303, 1305–07 (N.D.Iowa 1997); *Laird v. Stilwill*, 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); *Rural Water Sys. # 1 v. City of Sioux Ctr.*, 967 F.Supp. 1483,

1499–1501 (N.D.Iowa 1997), *aff'd,* 202 F.3d 1035 (8th Cir.2000); *Tralon Corp. v. Cedarapids, Inc.,* 966 F.Supp. 812, 817–18 (N.D.Iowa 1997), *aff'd,* 205 F.3d 1347, 2000 WL 84400 (8th Cir. Jan.21, 2000) (Table op.); *Security State Bank v. Firstar Bank Milwaukee, N.A.,* 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Community Sch. Dist.,* 963 F.Supp. 805 (N.D.Iowa 1997). Thus, the court will not consider those standards in detail here. Suffice it to say that Rule 56 itself provides, in pertinent part, as follows:

    Rule 56. Summary Judgment

    (b) For Defending Party. A party against whom a claim … is asserted … may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

    (c) Motions and Proceedings Thereon…. *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

Fed.R.Civ.P. 56(b) & (c) (emphasis added). Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.,* 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel,* 953 F.2d at 394 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Beyerbach,* 49 F.3d at 1326; *Hartnagel,* 953 F.2d at 394.

    Furthermore, "[w]here the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Arnold v. City of Columbia, Mo.,* 197 F.3d 1217, 1220 (8th Cir. 1999) (citing *Crain v. Board of Police Commissioners,* 920 F.2d 1402, 1405–06 (8th Cir.1990)); *Haberer v. Woodbury County,* 188 F.3d 957, 961 (8th Cir.1999) (also citing *Crain*); *Cearley v. General Am. Transp. Corp.,* 186 F.3d 887, 889 (8th Cir.1999) (same). Also, under Iowa law, whether or not there is a duty upon which a negligence action may be founded is generally a question of law that may properly be addressed on summary judgment. *See, e.g., Schoff v. Combined Ins. Co. of Am.,* 604 N.W.2d 43, 52 (Iowa 1999) ("Because the existence of a duty is a question of law for the courts to resolve, it may appropriately be addressed by way of summary adjudication."). However, underlying factual disputes concerning the scope of the duty in the circumstances may preclude summary judgment. *See In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.* 113 F.3d 1484, 1493 (8th Cir.1997).

    With these standards in mind, the court turns to consideration of Dean's motion for summary judgment on Mr. Goebel's claim and Goss's cross-claim against it.

### B. Dean's Potential Liability To Goebel

    The court will consider first Dean's contention that, because Dean owed no duty to Mr. Goebel, it is entitled to summary judgment on Mr. Goebel's negligence claim against it. Such a course is particularly appropriate, because Dean contends that its potential liability to Goss on Goss's cross-claim for indemnity and contribution is also dependent upon the viability of Mr. Goebel's negligence claim against Dean.

### 1. The parties' contentions

In support of its motion for summary judgment on Mr. Goebel's claims, Dean asserts the general rule that an employer of an independent contractor is not liable for the negligence of the contractor or the contractor's employees. Dean relies on RESTATEMENT (SECOND) OF TORTS § 409 for this general rule. Dean contends that, although it was itself a subcontractor of Goss, it stands in the place of an employer of another independent contractor, Norton, and as such Dean cannot be held liable for any negligence of Norton. Dean points out that only Norton performed any part of the installation of the printing press. Dean contends that none of the exceptions to the general rule of § 409, which are listed in RESTATEMENT (SECOND) OF TORTS §§ 410–429, are applicable here. Specifically, Dean asserts that its lack of control over the workplace and lack of supervision of Norton preclude a "retained control" exception to the general rule in this case. See RESTATEMENT (SECOND) OF TORTS § 414. Dean argues that a representative of Dean was only on the jobsite once or twice and provided insufficient supervision to fall within a "retained control" exception to § 409. Dean contends further that it was not under any nondelegable duty regarding jobsite safety during the installation of the printing press that would establish another exception to the general rule. See RESTATEMENT (SECOND) OF TORTS §§ 422 & 425. Finally, Dean contends that installation of the press was not a project involving "special danger" within the meaning of RESTATEMENT (SECOND) OF TORTS § 427. The Iowa cases upon which Dean relies for interpretation of the general rule and exceptions to it generally involve the question of a general contractor's liability for the injury or death of a subcontractor's employee in a construction accident.

Although Goss, Norton, and Mr. Goebel all concede that RESTATEMENT (SECOND) OF TORTS § 409 states the general rule of liability, they do not concede that the general rule is applicable here. Goss and Mr. Goebel contend that Mr. Goebel was a third-party beneficiary of Dean's contract with Goss, and that under that contract, Dean assumed a duty to see that the step and step cover were properly installed. Goss, Mr. Goebel, and Norton also contend that Dean's "premises liability" authorities are inapposite, because those authorities all consider liability for injuries during construction projects, but do not consider the liability of contractors to a third party who takes possession of premises or equipment after construction or installation of equipment has been completed by the contractor. The resisting parties contend that a party who has undertaken a duty to install equipment for the owner of premises cannot escape liability for injuries to the premises owner's employees by contracting away the installation work, because the duty remains non-delegable, even if the work can be contracted out. Instead of RESTATEMENT (SECOND) OF TORTS § 414, Goss and Mr. Goebel rely on § 412 as properly addressing liability in this case, because § 412 pertains to the liability of a land owner (or contractor) for failure to ascertain if land or a chattel upon which a contractor (or subcontractor) has worked is reasonably safe after the work is completed.

### 2. The "general rule" and exceptions to it

■ Dean is correct that Iowa recognizes the "general rule" stated in RESTATEMENT (SECOND) OF TORTS § 409. See Kragel v. Wal–Mart Stores, Inc., 537 N.W.2d 699, 702 (Iowa 1995); Lunde v. Winnebago Indus., Inc., 299 N.W.2d 473, 475 (Iowa 1980). That rule provides as follows:

> Except as stated in § 410–429, the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants.

RESTATEMENT (SECOND) OF TORTS § 409. As the Iowa Supreme Court explained in Kragel,

> The rationale for the rule is that

since the employer has no power of control over the manner in which the work is to be done by the contractor, it is to be regarded as the contractor's own enterprise, and he, rather than the employer, is the proper party to be charged with the responsibility of preventing the risk, and bearing and distributing it.

Restatement (Second) of Torts § 409 cmt. b (1965).

*Kragel,* 537 N.W.2d at 702.

In *Kragel,* however, the Iowa Supreme Court noted that "this general rule 'is riddled with a number of common-law exceptions that have practically subsumed the rule.'" *Id.* (quoting *Rowley v. Mayor & City Council of Baltimore,* 305 Md. 456, 462, 505 A.2d 494, 497 (Ct.App.1986)). Indeed, the RESTATEMENT itself recognizes the limitations of the rule:

Since [the decision inaugurating the rule], the law has progressed by the recognition of a large number of "exceptions" to the "general rule." These exceptions are stated in § 410–429. They are so numerous, and they have so far eroded the "general rule," that it can now be said to be "general" only in the sense that it is applied where no good reason is found for departing from it. As was said in Pacific Fire Ins. Co. v. Kenny Boiler & Mfg. Co., 201 Minn. 500, 277 N.W. 226 (1937), "Indeed it would be proper to say that the rule is now primarily important as a preamble to the catalog of its exceptions."

RESTATEMENT (SECOND) OF TORTS § 409 cmt. b.

As the Iowa Supreme Court explained in *Kragel,* the exceptions listed in § 410–29 of the RESTATEMENT fall into three broad categories:

1. Negligence of the employer in selecting, instructing, or supervising the contractor.

2. Nondelegable duties to the employer, arising out of some relation toward the public or the particular plaintiff.

3. Work that is specially, peculiarly, or "inherently" dangerous.

*Kragel,* 537 N.W.2d at 703 (quoting RESTATEMENT (SECOND) OF TORTS § 409 cmt. b (1965)). "Sections 410 through 415 [of the RESTATEMENT (SECOND) OF TORTS] deal with liability imposed because of the employer's actual fault," while sections 416 to 429 deal with principles of vicarious liability. *Kragel,* 537 N.W.2d at 703.

### 3. Applicability of exceptions here

Dean contends that none of these exceptions applies, while Mr. Goebel and the resisting defendants contend that Dean can be liable under either the "own negligence" or "non-delegable duties" exceptions. Because no party seriously argues that installation of the press involved in this case was "specially, peculiarly, or 'inherently' dangerous," *see* RESTATEMENT (SECOND) OF TORTS § 409 cmt. b.; *Kragel,* 537 N.W.2d at 703, the court will consider in this section only whether Dean can potentially be held liable under the "own negligence" or "non-delegable duties" exceptions.

#### a. "Own negligence"

As to its own negligence, Dean asserts that the only applicable exception might be RESTATEMENT (SECOND) OF TORTS § 414, but that Dean does not fall within this exception, because it did not exercise sufficient control over Norton's work. Mr. Goebel and Goss, however, counter that the applicable exception is stated in § 412. The court begins its analysis with the section to which Dean, the movant for summary judgment, has pointed.

■ *i. RESTATEMENT (SECOND) OF TORTS § 414.* Section 414 states a "retained control" exception to the general rule of § 409, as follows:

§ 414. Negligence in Exercising Control Retained by Employer

One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

RESTATEMENT (SECOND) OF TORTS § 414. Dean contends that he entrusted the work to Norton, another independent contractor, but retained no control over any part of the work done by Norton, and thus cannot be liable to Mr. Goebel (or Goss). Dean contends that Rodney Dean was on the worksite only once or twice, while Goss representatives exercised daily control and supervision over the installation of the printing press.

The decisions of the Iowa Supreme Court interpreting § 414, as Mr. Goebel and the resisting defendants point out, all involve questions of "premises liability," that is, all involve cases in which an employee of a subcontractor was injured during the construction phase of a project, and the question was whether the general contractor retained sufficient control of the worksite to be held liable. In the most recent of these decisions, *Downs v. A & H Constr., Ltd.*, 481 N.W.2d 520 (Iowa 1992), the plaintiff was an hourly construction worker employed by the subcontractor selected by the general contractor, A & H Construction, to do the framing for a show house. *Downs*, 481 N.W.2d at 522. The plaintiff shot himself with a nailgun while working on a scaffolding. *Id.* at 522–23. The plaintiff alleged that the general contractor had not provided a safe working environment. *Id.* at 523. The general contractor countered that it had not retained sufficient control of the premises, as required by § 414, to be held liable. *Id.* The Iowa Supreme Court, after reviewing its prior precedent and Comment *c.* to RESTATEMENT (SECOND) OF TORTS § 414, concluded that the general contractor had not retained sufficient control of the premises to be held liable, even if the general contractor retained some general supervisory control. *Id.* at 525. In *Giarratano v. Weitz Co.*, 259 Iowa 1292, 147 N.W.2d 824 (1967), and *Farris v. General Growth Dev. Corp.*, 354 N.W.2d 251 (Iowa App.1984), Iowa courts found that the general contractor on a building project *had* retained sufficient control of the premises to be held liable for injuries to a subcontractor's employee sustained during the construction of a building.

Mr. Goebel and the resisting defendants are correct, however, that the cases interpreting § 414 are factually distinguishable from the circumstances here, because the claim here has not been brought by an employee of a subcontractor against the general contractor for an injury the employee sustained during the course of the construction project. Rather, this case involves an injury to an employee of the owner of the premises for injuries suffered several weeks after the installation of the press had been completed, and the allegation is that the contractor, subcontractor, and subcontractor's subcontractor negligently left the printing press in a dangerous condition.

***ii. RESTATEMENT (SECOND) OF TORTS § 412.*** The resisting parties argue that the section of the RESTATEMENT (SECOND) OF TORTS pertaining to an exception for the contractor's "own negligence" that is applicable here is § 412. That section of the RESTATEMENT provides as follows:

> § 412. Failure to Inspect Work of Contractor After Completion
>
> One who is under a duty to exercise reasonable care to maintain land or chattels in such condition as not to involve unreasonable risk of bodily harm to others and who entrusts the work of repair and maintenance to an independent contractor, is subject to liability for bodily harm caused to them by his failure to exercise such care as the circumstances may reasonably require him to exercise to ascertain whether the land or chattel is in reasonably safe condition after the contractor's work is completed.

RESTATEMENT (SECOND) OF TORTS § 412. Comment *a.* to this section states that

> [t]he rule stated in this Section deals with one of the steps that must be taken to satisfy the duty to exercise reasonable care to maintain land and chattels in a reasonably safe condition. See §§ 333–408. Where the duty of maintaining such land and chattels is entrusted to an independent contractor, the rule stated in this Section requires the employer of a contractor to exercise reasonable care to subject the work after completion to such an inspection as is reasonable under the circumstances.

RESTATEMENT (SECOND) OF TORTS § 412 cmt. *a.* Furthermore, Comment *b.* to this section specifically states that "[t]he rule stated in this Section also applies to a person who is himself a contractor, but who employs a subcontractor to do part of the work which he has contracted to perform, a situation which is of common occurrence." *Id.* at cmt. *b.*

This rule appears to the court to be applicable here, because it pertains not only to "land," but to "chattels" on which a contractor performs some work, and the printing press was indeed such a "chattel." *See* RESTATEMENT (SECOND) OF TORTS § 412. According to comment *b.*, the rule applies not only to Goss (a contractor), which employed Dean (a subcontractor) to do part of the work, but necessarily—or at least analogously—to another tier of contractor-subcontractor relations, to Dean as the employer of another subcontractor, Norton. *Id.* at cmt *b.*

Dean argues that § 412 is inapplicable, because Dean was never in possession of the land or the chattels involved in this action, so that no duty under § 412 can be applied to establish Dean's liability. However, nowhere does § 412 require that Dean take possession of the land or the printing press. Rather, as § 412 states, the duty "to exercise such care as the circumstances may reasonably require [the person hiring a contractor] to exercise to ascertain whether the land or chattel is in

reasonably safe condition after the contractor's work is completed" is applicable to "[o]ne who is under a duty to exercise reasonable care to maintain land or chattels in such condition as not to involve unreasonable risk of bodily harm to others" in the first place. RESTATEMENT (SECOND) OF TORTS § 412. Thus, the duty stated in § 412 applies only if the "one" to whom the section refers has the preconditional duty to maintain land or chattels in a condition that is not unreasonably risky, whether or not the party under that duty took possession of the land or chattel. In other words, the question of whether Dean had a duty under § 412 does not depend upon whether Dean took possession of the land or the printing press, but upon the question of whether Dean is "[o]ne who is under a duty to exercise reasonable care to maintain land or chattels in such condition as not to involve unreasonable risk of bodily harm to others," who then "entrust[ed] the work of repair and maintenance to an independent contractor." *Id.* Therefore, the question is whether Goss had such a preconditional duty, passed to it from Heartland Press, the owner of the chattel (the press), and whether Dean in turn was subjected to the preconditional duty when Goss entrusted the work to Dean. The source of this preconditional duty in the circumstances of this case is not identified by the resisting parties.

***iii. Source of the preconditional duty.*** Returning to Comment *a.* to § 412, the source of the preconditional duty "to exercise reasonable care to maintain land or chattels in such condition as not to involve unreasonable risk of bodily harm to others" must lie somewhere in sections 333–408 of the RESTATEMENT. *See* RESTATEMENT (SECOND) OF TORTS § 412 cmt. *a.* The court concludes that the necessary preconditional duty can be found in section 404, which states the following:

> § 404. Negligence in Making, Rebuilding, or Repairing Chattel
>
> One who as an independent contractor negligently makes, rebuilds, or repairs a

chattel for another is subject to the same liability as that imposed upon negligent manufacturers of chattels.

RESTATEMENT (SECOND) OF TORTS § 404. Comment *b.* explains further that,

[i]n order that a contractor may be subject to liability under the rule stated in this Section it is not necessary that his negligence have changed the condition of the chattel for the worse. It is enough that the chattel because of his negligence is not in that safe condition in which a competent contractor would have put it and that it is used, or permitted to be used, in reliance upon the care and competen[ce] of the contractor. (See § 403, Comment *b* ).

*Id.* at cmt. *b.*

The only decision of the Iowa Supreme Court to interpret § 404 notes that it "involves claims against an independent contractor who negligently rebuilds or repairs a chattel." *Anderson v. Glynn Constr. Co., Inc.,* 421 N.W.2d 141, 144 (Iowa 1988). The court concluded that Comment *b.* to § 404 incorporates the same "deceptive appearance of safety" standard that has been recognized in the application of § 403. *Id.* Thus, whether "the chattel because of [the contractor's] negligence is not in that safe condition in which a competent contractor would have put it," RESTATEMENT (SECOND) OF TORTS § 404 cmt. *b.,* depends upon whether any act of the defendant in performing work on the chattel misled the plaintiff or his employer on the question of whether the chattel was in that safe condition in which a competent contractor would have put it. *Anderson,* 421 N.W.2d at 143 (in concluding that no "deceptive appearance of safety" was shown, the court found "[n]o act of the defendant in replacing the sections of the auger beneath the open hopper boxes misled plaintiff or his employer on the question of whether the auger remained unguarded in these locations. They were aware of that fact both prior to and after any work by defendant at the Bruntlett Elevator. The facts do not support a submissible jury issue under section 403.").

In *Yost v. Fuscaldo,* 185 W.Va. 493, 408 S.E.2d 72 (1991), the West Virginia Supreme Court of Appeals concluded that § 404 governed the liability of an independent contractor who "assembles," rather than strictly-speaking "rebuilds" or "repairs," a chattel. *See Yost,* 408 S.E.2d at 76–77. This court agrees that § 404 is applicable in the circumstances presented here, where Goss is both a manufacturer and assembler of the printing press, and Dean and Norton are only "assemblers." With one difference discussed below, the court cannot find a meaningful distinction between the task of "assembling" a chattel—and the attendant duty to complete an "assembly" with the care and competence necessary to put the chattel in the safe condition one would reasonably expect in reliance upon the care and competence of the assembler—and the task and duties of a person "repairing" or "rebuilding" the chattel. When "assembly" is not done to this standard of care, there is the same "deceptive appearance of safety" that arises from "repair" or "rebuilding" that does not satisfy the standard. *See* RESTATEMENT (SECOND) OF TORTS § 404 & cmt. *b.*

■ *iv. The duty in this case.* In this case, the duty imposed by § 404 was imposed upon Goss—as the contractor hired to install the printing press for Heartland Press—to use reasonable care and competence to ensure that the printing press was in the safe condition in which a competent contractor would have put it. RESTATEMENT (SECOND) OF TORTS § 404 & cmt. *b.* There is a "deceptive appearance of safety" if any act of Goss misled Mr. Goebel or Heartland Press on the question of whether the access step was properly secured. *See id.* at cmt. *b.; see also Anderson,* 421 N.W.2d at 143. Because the parties all agree that all of the installation contracts and subcontracts contemplated proper installation of the access steps, a "deceptive appearance of safety" within the meaning

of § 404 would arise if the access step that purportedly caused Mr. Goebel's accident was not in fact properly secured by the parties charged with installing it. Failure to secure the access steps properly would thus violate the duty stated in § 404.

When Goss contracted with Dean, Goss incurred the duty identified in § 412 "to exercise such care as the circumstances may reasonably require [Goss] to exercise to ascertain whether the [printing press was] in reasonably safe condition after [Dean's] work [was] completed," i.e., to determine whether the access step was in fact properly secured. RESTATEMENT (SECOND) OF TORTS § 412 & cmt. b. Similarly, Dean incurred the duty imposed by § 404 by virtue of its contract with Goss, and incurred thereby the duty stated in § 412 to inspect the work of Norton, its own subcontractor, upon completion of Norton's work. Id.

Thus, there is a legal basis— § 404—for imposing upon Dean the duty under § 412 to Mr. Goebel "to exercise such care as the circumstances may reasonably require [Dean] to exercise to ascertain whether the [printing press was] in reasonably safe condition after [Norton's] work [was] completed." RESTATEMENT (SECOND) OF TORTS § 412 & cmt. b. That is, Dean has this duty to Mr. Goebel if Mr. Goebel is a third-party beneficiary of Goss's contract with Heartland Press, and hence a third-party beneficiary of Dean's contract with Goss and Dean's contract with Norton.

■ In *Vogan v. Hayes Appraisal Assocs., Inc.*, 588 N.W.2d 420 (Iowa 1999), the Iowa Supreme Court explained the principles applicable to the question of whether a stranger to a contract is nevertheless a third-party beneficiary of that contract:

This court has adopted the following principles from the Restatement (Second) of Contracts that are applicable to third-party beneficiary cases:

(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b) *the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.*

(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

See *Tredrea [v. Anesthesia & Analgesia, P.C.]*, 584 N.W.2d [276,] 281 [(Iowa 1998)]. (quoting Restatement (Second) of Contracts § 302 (1979)) (emphasis added); *Midwest Dredging Co. v. McAninch Corp.*, 424 N.W.2d 216, 224 (Iowa 1988) (same). This court has determined that the primary question in a third-party beneficiary case is whether the contract manifests an intent to benefit a third party. *Tredrea*, 584 N.W.2d at 281; *Midwest Dredging Co.*, 424 N.W.2d at 224. However, this intent need not be to benefit a third party directly. *Tredrea*, 584 N.W.2d at 281.

*Vogan*, 588 N.W.2d at 423. Applying these principles here, it is clear that, as a matter of law, Goss's contract with Heartland Press, as well as Goss's contract with Dean and Dean's contract with Norton, manifested an intent to benefit Heartland Press employees by providing safe and proper installation of the printing press. See *id.* At a minimum, Mr. Goebel was an "incidental beneficiary" of the installation contracts. *Id.* Furthermore, both § 404 and § 412 of the RESTATEMENT (SECOND) OF TORTS establish the duty of a party engaged in work upon a chattel to conduct that work with the care and competence one can reasonably expect from a competent contractor to ensure that the work is completed so that the chattel does not pose an unreasonable risk of bodily harm to

anyone. *See* RESTATEMENT (SECOND) OF TORTS §§ 404 & 412. Because the reasonable safety of the printing press to persons who used it was a duty imposed upon the parties to the contracts for installation of the printing press, and that duty was distinct from the contractual duties to install the press, breach of contractual duties here will give rise to an independent action in tort. *See Haupt v. Miller*, 514 N.W.2d 905, 910 (Iowa 1994) (recognizing that not every breach of contract gives rise to a tort claim, but a tort claim will lie for breach of a contractual duty where a duty recognized by the law of torts exists between the plaintiff and the defendant that is distinct from a duty imposed by the contract); *Preferred Marketing v. Hawkeye Nat'l Life*, 452 N.W.2d 389, 397 (Iowa 1990) (same). Plainly, then, Mr. Goebel stands as a third-party beneficiary of the installation contracts and subcontracts for installation of the printing press and, as such, he is entitled to pursue a tort claim for his injuries resulting from negligent installation of the printing press under the contracts.

Because Dean did have a duty to Mr. Goebel, Dean can be held liable for its own negligence—breach of the duty to inspect the work of Norton imposed by § 412—as an exception to the "general rule" of § 409. Therefore, Dean is not entitled to summary judgment on Mr. Goebel's negligence claim against it on the ground that Dean had no duty to Mr. Goebel.

***v. Scope of Dean's "own negligence."*** However, this is not to say that Mr. Goebel can properly assert, under this exception, all of the specifications of negligence he has brought against Dean. Again, Mr. Goebel alleges that Dean was negligent in the following respects: failing to secure the metal access step properly; failing to exercise reasonable care in the assembly and installation of the metal access step connected to the printing press; failing to conduct a proper inspection of work performed; failing to choose and incorporate proper materials into the assembly and installation of the printing press and its attached metal access step; and other unspecified acts. However, only the third specification falls within the duty imposed upon Dean by RESTATEMENT (SECOND) OF TORTS § 412.

As the West Virginia Supreme Court of Appeals explained in *Yost v. Fuscaldo*, 185 W.Va. 493, 408 S.E.2d 72 (1991),

> Although the [§ 404 of the] Restatement aligns the duty of care owed by an independent contractor with that of a manufacturer, an assembler of a product is, by his very nature, different from a manufacturer. Because of the manufacturer's position in designing the product to include safety devices, his duty of reasonable care requires him to recognize an unreasonable risk of harm to those who use the products as designed. Since an assembler depends upon the manufacturer to properly design the product he assembles, his standard of reasonable care is less onerous. Thus, the assembler's duty of reasonable care is to recognize an unreasonable risk of harm to those who use the product as assembled, unless, as we discuss below, the assembler has or alleges he has a special skill allowing him to modify the product.

*Yost*, 408 S.E.2d at 76–77. Thus, Dean, as an assembler of the printing press, does not stand precisely in the shoes of Goss, the manufacturer and installer of the press. Although Dean's duty under § 404 extends to proper assembly of the printing press, under *Yost*, unless Mr. Goebel can show that Dean had a special skill allowing it to modify the product, Dean's duty does not extend to choosing and incorporating proper materials in the assembly and installation of the access step.

Furthermore, the duty imposed upon Dean under the applicable "own negligence" exception is not the duty imposed upon Dean by § 404, but the duty imposed by § 412 upon one who otherwise has the duty under § 404, but who contracts the work to a subcontractor. *See* RESTATE-

MENT (SECOND) OF TORTS § 412; *see also* RESTATEMENT (SECOND) OF TORTS § 409 cmt *b.* (identifying "own negligence" exceptions to the "general rule"); *Kragel,* 537 N.W.2d at 703 ("Sections 410 through 415 [of the RESTATEMENT (SECOND) OF TORTS] deal with liability imposed because of the employer's actual fault," while sections 416 to 429 deal with principles of vicarious liability). Thus, Dean's liability for its "own negligence" is limited to breach of a duty imposed by § 412 "to exercise such care as the circumstances may reasonably require [Dean] to exercise to ascertain whether the [printing press was] in reasonably safe condition after [Norton's] work [was] completed." RESTATEMENT (SECOND) OF TORTS § 412 & cmt. *b.*[1] This breach of duty matches Mr. Goebel's third specification of Dean's negligence, Dean's alleged failure to conduct a proper inspection of work performed. *See* Third Amended Complaint, Division I.

*vi. Summary.* Dean is not entitled to summary judgment on Mr. Goebel's negligence claim, because Dean was subject to a duty—and hence can be held liable for violation of the duty—to inspect the work of Norton pursuant to RESTATEMENT (SECOND) OF TORTS § 412 under the "own negligence" exception to the "general rule" of non-liability stated in § 409. Because Dean challenged Mr. Goebel's negligence claim on the ground that Dean owed no duty to Mr. Goebel, and not on the ground that no duty had been breached, the court will not consider whether there are genuine issues of material fact as to whether Dean breached its duty by failing to inspect Norton's installation of the access step. Suffice it to say, as to the duty to inspect, § 412 requires inspection that is reasonable under the circumstances. *See* RESTATEMENT (SECOND) OF TORTS § 412. What inspection is reasonable under the circumstances is defined in more detail by

Comments *c.* and *d.* to § 412. *See id.* at cmts. *c. & d.; see also Foltz v. Northwestern Bell Tel. Co.,* 221 Neb. 201, 376 N.W.2d 301, 308–309 (1985) (considering the standard of care under § 412, and concluding, in part, that the issue is whether any reasonable inspection would have revealed the defect).

### b. Non-delegable duty

The second exception at issue here to the "general rule" of non-liability stated in RESTATEMENT (SECOND) OF TORTS § 409 is the "non-delegable duty" exception. *See* RESTATEMENT (SECOND) OF TORTS § 409 cmt. *b.; Kragel,* 537 N.W.2d at 703. The resisting parties, particularly Goss and Mr. Goebel, contend that Dean was also subject to a non-delegable duty to install the press properly, including the proper installation of the access steps, by virtue of Dean's contract with Goss, and that, although Dean could delegate the work under that contract to Norton, it could not delegate the duty to see that the work was done properly. Dean counters that its contract with Goss did not expressly require the assumption of a duty to maintain safe premises.

*i. The Giarratona decision.* For their "non-delegable duty" argument, Goss and Mr. Goebel rely on *Giarratona v. Weitz,* 259 Iowa 1292, 147 N.W.2d 824 (1967). The court finds that the pertinent portion of the *Giarratona* decision is the following:

'[O]ne who owes, and is personally bound to perform, an absolute and positive duty to the public or an individual cannot escape the responsibility of seeing that duty performed by delegating it to an independent contractor, and will be liable for injuries resulting from the contractor's negligence in the performance thereof, whether the duty is imposed by law or by contract ***.' 57

---

1.  This is not to say that Dean can necessarily escape liability for violation of the duty imposed by RESTATEMENT (SECOND) OF TORTS § 404. The court will return later in this decision to the question of whether the duty imposed by

§ 404 is a "non-delegable duty," and hence another exception to the "general rule" of non-liability stated in RESTATEMENT (SECOND) OF TORTS § 409.

C.J.S. Master and Servant § 591. In support of this statement see *State Farm Mutual Automobile Ins. Co. v. Dodd*, 276 Ala. 410, 162 So.2d 621, 626; *Jack Cooper Transport Company v. Griffin* (Okl.), 356 P.2d 748, 754, and citations; *Mills v. Krauss* (Fla.App.), 114 So.2d 817, 819; *Capitol Chevrolet Co. v. Lawrence Warehouse Co.* (1955, 9 Cir.Cal.), 227 F.2d 169, 173; *Elliott Consolidated School District v. Busboom* (D.C.S.D.Iowa W.D.), 227 F.Supp. 858, 862.

'In some circumstances duties may devolve upon an employer which he cannot delegate to another, and in such cases the employer is liable for breach or nonperformance of such duties even though he employs an independent contractor to do the work.' *Mills v. Krauss, supra,* citing 27 Am.Jur., Independent Contractors, § 48.

'Where one person owes another a contractual duty to act, the law imposes upon the person owing that duty the further duty of acting with due care in the performance of his contract so as not to injure the contractee's person or property. This duty is nondelegable. *See* note, Restatement, Torts, page 1101 (now 'Introductory Note', topic I, following comment to section 409, Restatement, Second, Torts). That is, the performance of the contract may be delegated to another, but this delegation does not relieve the contractor of the duty to act, or of his duty to act with due care.' *Pacific Fire Ins. Co. v. Kenny Boiler & Mfg. Co.,* 201 Minn. 500, 277 N.W. 226, 228.

*Giarratano,* 147 N.W.2d at 831–32.

Here, Dean's contention that its contract with Goss did not expressly require it to assume the duty to maintain safe premises simply misses the point. Although *Giarratano* involved the question of whether the general contractor assumed a non-delegable duty to provide a safe workplace for its own employees and employees of subcontractors, *see Giarratano,* 147 N.W.2d at

832, the *rule* as stated in *Giarratano* is not restricted to a contractual duty to maintain safe premises. Rather, the question is whether "one person owes another a contractual duty to act." *See id.* (internal citations and quotation marks omitted). Thus, the *Giarratano* rule is applicable here.

Furthermore, the rule stated in *Giarratona* is consonant with the rule stated in RESTATEMENT (SECOND) OF TORTS § 404. Again, that section provides that "[o]ne who as an independent contractor negligently makes, rebuilds, or repairs a chattel for another is subject to the same liability as that imposed upon negligent manufacturers of chattels." RESTATEMENT (SECOND) OF TORTS § 404; *see also Yost,* 408 S.E.2d at 76–77 (observing that § 404 "aligns the duty of care owed by an independent contractor with that of a manufacturer" and concluding that § 404 governs the liability of an independent contractor who "assembles," rather than strictly-speaking "rebuilds" or "repairs," a chattel). By virtue of its contract to install the printing press, § 404 imposed upon Goss a duty to install the printing press properly—including installation that did not have a "deceptive appearance of safety." *See* RESTATEMENT (SECOND) OF TORTS § 404 & cmt. *b.* This same duty was imposed upon Dean by virtue of its contract with Goss.

■ *ii. Application of the rule in Giarratona.* Here, whatever other terms the contract between Goss and Dean contained, the parties agree that Dean's contract with Goss included Dean's contractual duty to install the printing press, which the parties further agree included the duty to install the access steps properly. As a result of this duty, "the law imposes upon the person owing that duty the further duty of acting with due care in the performance of his contract so as not to injure the contractee's person or property [and][t]his duty is nondelegable." *Giarratano,* 147 N.W.2d at 832 (internal citations and quotation marks omitted). In other words, although "the performance of

[Dean's] contract [with Goss to install the printer] may be delegated to [Norton], . . . this delegation does not relieve [Dean] of the duty to act, or of his duty to act with due care." *Id.* (internal citations and quotation marks omitted); *see also id.* at 831–32 (Dean, as "one who owes, and is personally bound to perform, an absolute or positive duty to [Goss] cannot escape the responsibility of seeing that duty performed by delegating it to [Norton], and will be liable for injuries resulting from [Norton's] negligence in the performance thereof").

Therefore, Dean's motion for summary judgment on Mr. Goebel's claim against it must also be denied on the ground that, under its contract with Goss, Dean was under a non-delegable duty to install the printing press with due care, which included the duty to install the access steps properly, even though Dean contracted this work to Norton. This duty thus encompasses Mr. Goebel's first and second specifications of Dean's negligence, in which Mr. Goebel alleged Dean's failure to secure the metal access steps properly, and failure to exercise reasonable care in the assembly and installation of the metal access step connected to the printing press.

### C. Dean's Liability to Goss

The court turns next to that part of Dean's motion for summary judgment directed at Goss's cross-claim against Dean. In its cross-claim, filed January 6, 1999, defendant Goss asserts that, "[i]f it is determined that the plaintiff was injured when the part of the press which Dean & Associates agreed to install gave way, it will be due to the fault of Dean & Associates or a breach of its contract with Goss Graphics and thus Dean & Associates must bear its proportionate share of the liability and damages." Goss's Cross–Claim, ¶ 4. The cross-claim also alleges that, if a judgment is entered against Goss Graphics that represents Dean's proportionate percentage of liability, Goss will be entitled to judgment in that amount against Dean. *Id.* at ¶ 5. Paragraph 6 of the cross-claim asserts that Dean entered into a contract with Goss whereby Dean agreed to indemnify, defend, and protect Goss from financial harm if Goss is held liable to the plaintiff for the negligence of Dean. *Id.* at ¶ 6.[2]

In its briefs and oral argument, Dean contended that, under either common-law or the purported indemnity contract between Dean and Goss, Dean cannot be liable to Goss if Dean was not itself negligent, and Dean cannot be negligent where it owed no duty to Mr. Goebel. Thus, Dean argued, in the first instance, that it was entitled to summary judgment on the cross-claim on the same ground it was entitled to summary judgment on Mr. Goebel's negligence claim: lack of any duty to Mr. Goebel. Dean also contends that the indemnity provision upon which Goss apparently relies was not a part of the contract between the parties, but only part of a purchase order that did not establish terms of the contract between the parties. Thus, Dean argues that there is no authority for Goss's cross-claim.

### 1. Contribution based on Dean's negligence

The short response to Dean's first argument for summary judgment on Goss's counterclaim—Dean's argument that it cannot be held liable to Mr. Goebel, and hence cannot be liable to Goss for negligence toward Mr. Goebel—is that, as explained above, Dean *can* be liable to Mr. Goebel for Dean's own negligence. Because Dean can be liable for negligence to Mr. Goebel, there is a basis for Goss's indemnity and contribution cross-claim against Dean. Therefore, Dean's motion for summary judgment on Goss's cross-claim also fails as a matter of law on the first ground advanced by Dean.

---

**2.** Dean has never answered the cross-claim.

### 2. Authority for a contribution claim

The court will next consider Dean's additional contention that there is no authority for Goss's cross-claim. Dean contends that the purported "indemnity" provision in the purchase order upon which Goss relies was not part of the contract between Goss and Dean. At oral arguments, Goss contended that the first it had ever heard that Dean challenged the applicability of the indemnity provision in the purchase order was in reply to Goss's resistance to Dean's motion for summary judgment on Goss's cross-claim. Goss contends that Rodney Dean repeatedly acknowledged in depositions that the indemnity provision in the purchase order was applicable *if Dean was negligent.* Furthermore, even if the purchase order was not part of its contract with Dean, Goss contends that it has a common-law right to indemnity and contribution from Dean for Dean's negligence.[3]

#### a. Contractual right

The indemnity provision of the purchase order states the following:

> Seller [Dean] hereby indemnifies and holds Buyer [Goss], its directors, officers, agents and employees, harmless against any and all claims, action or demands against Buyer [Goss], its directors, officers, agents and employees and against any and all damages, liabilities or expenses, including counsel fees for injury to or death of any person and for loss of or damage to any and all property, *arising out of the acts or omissions of Seller [Dean] under this agreement.*

Defendant Dean's Exhibit 10 (emphasis added). It is not clear to the court in what way this contractual provision, if applicable, would provide Goss with any more expansive right to indemnity and contribution than is available under Iowa common law or Iowa Code § 668, Iowa's Comparative Fault Act, and Goss has not argued that the contract would provide a more expansive right to indemnity and contribution. Therefore, the court need not decide whether the purchase order necessarily was part of the contract between Goss and Dean, if there is some other basis for Goss's indemnity and contribution claim.

#### b. Common-law and statutory authority

The Iowa Supreme Court recently looked to the RESTATEMENT OF RESTITUTION for the authority for a common-law claim of indemnity:

> Under the provisions of the Restatement:
>
> > A person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct.

Restatement of Restitution § 76, at 331 (1936).

In *Hunt v. Ernzen,* 252 N.W.2d 445, 448 (Iowa 1977), we cited section 76 of the Restatement of Restitution in support of indemnification of the original tortfeasor. We recognized indemnity "is founded on equitable principles; it is allowed where one person has discharged an obligation that another person should bear; it places the final responsibility where equity would lay the ultimate burden." *Hunt,* 252 N.W.2d at 447–48 (citation omitted). In *Hunt,* a tortfeasor, who was held liable for injuries caused by him and those injuries

---

3. Dean does not appear to challenge Goss's common-law right of indemnity, even if the indemnity provision of the purchase order is inapplicable. Instead, at oral arguments, in response to Goss's contention that it had a common-law right to indemnity even in the absence of a contractual right, Dean returned to the argument that it could not be liable on Goss's cross-claim, because Dean had not been negligent, and therefore could not be liable to Mr. Goebel. As the court noted just above, Dean's argument based on lack of a cognizable negligence claim by Mr. Goebel fails.

caused by the treating hospital, was allowed to seek indemnity for the latter injury. Because the original tortfeasor was held liable to the injured person by operation of law, he could claim indemnity against the hospital.

In *Peters v. Lyons,* 168 N.W.2d 759, 766–68 (Iowa 1969), we recognized a common law right of indemnity in certain situations. We stated:

> The breach of nondelegable duties may constitute a basis for an action in indemnity against a third party who creates a dangerous condition.... One who is liable only by reason of a duty imposed by law for the consequences of another's negligence may recover over against the active perpetrator of the wrong.

*Peters,* 168 N.W.2d at 766. We held an owner of a dog who was not guilty of a wrong but was statutorily liable for damages caused by the owner's dog, may be indemnified by the party guilty of the wrong that caused the loss. *Id.* at 768.

> ... [C]ommon law indemnity is limited to circumstances where there is an express contract, vicarious liability, or a breach of an independent duty of the indemnitor to the indemnitee. *Daniels v. Hi–Way Truck Equip., Inc.,* 505 N.W.2d 485, 490 (Iowa 1993). Both *Hunt* and *Peters* were classic cases involving vicarious liability. Indemnity was allowed because the law imposed liability on one person for the actionable conduct of another.

*State ex rel. Miller v. Philip Morris, Inc.,* 577 N.W.2d 401, 405–06 (Iowa 1998); *see also Biddle v. Sartori Mem. Hosp.,* 518 N.W.2d 795, 799 (Iowa 1994) (recognizing the "well settled rule that a principal found vicariously liable for the negligent acts of an agent retains a right of full indemnity against the actual tortfeasor"). Common-law indemnity will lie here, even if the purchase order does not provide an "express contract" for indemnity, because Goss could be held vicariously liable for

omissions of Dean pursuant to § 404 and § 412 of the RESTATEMENT (SECOND) OF TORTS, and Goss's cross-claim would also lie on the basis of Goss's allegations that Dean breached an independent duty to Goss to install the printing press properly under the undisputed terms of the installation contract between Goss and Dean. *Id.*

▮ Iowa's common-law definition of contribution was "rooted in joint liability" and Iowa's Comparative Fault Act, found in IOWA CODE CH. 668, has not changed that requirement:

> Our common-law definition [of contribution] was rooted in joint liability:
>
> > Contribution rests on common liability, not on joint negligence or joint tort. Common liability exists when two or more actors are liable to an injured party for the same damages, even though their liability may rest on different grounds.

*Federated Mut. Implement & Hardware Ins. Co. v. Dunkelberger,* 172 N.W.2d 137, 142 (Iowa 1969). Under Iowa Code section 668.5, a "right of contribution exists between or among two or more persons who are liable upon the same indivisible claim for the same injury, death, or harm, whether or not judgment has been recovered against all or any of them." The common liability criterion was unaffected by enactment of this statutory definition. *Allied Mut. Ins. Co. v. State,* 473 N.W.2d 24, 26–27 (Iowa 1991).

*Chicago Central & Pac. R.R. Co. v. Union Pac. R.R. Co.,* 558 N.W.2d 711, 715 (Iowa 1997). There is no "common liability" where a jury determines that one of the alleged actors is not at fault for the harm to the injured party. *Id.* On the other hand, to defeat a motion for directed verdict—and hence a motion for summary judgment, which applies essentially the same standard—the party seeking contribution "need only produce evidence on which a fact finder could reasonably base a finding of common liability." *Cincinnati*

*Ins. Co. v. Evans*, 493 N.W.2d 798, 800 (Iowa 1992). As explained above, there is a legal basis on which to find Dean can be held "at fault" for injuries to Mr. Goebel and a basis for finding the common liability of Dean and Goss for failure to install the access step properly, as both were under a contractual duty to install the access step. Thus, Dean is not entitled to summary judgment on Goss's cross-claim on the basis of a lack of "common liaiblity."

Goss's claim for contribution is governed by Iowa's Comparative Fault Act.[4] The pertinent provision of the Act provides as follows:

668.6. Enforcement of contribution

1. If the percentages of fault of each of the parties to a claim for contribution have been established previously by the court as provided in section 668.3, a party paying more than the party's percentage share of damages may recover judgment for contribution upon motion to the court or in a separate action.

2. If the percentages of fault of each of the parties to a claim for contribution have not been established by the court, contribution may be enforced in a separate action, whether or not a judgment has been rendered against either the person seeking contribution or the person from whom contribution is sought.

3. If a judgment has been rendered, an action for contribution must be commenced within one year after the judgment becomes final. If a judgment has not been rendered, a claim for contribution is enforceable only upon satisfaction of one of the following sets of conditions:

a. The person bringing the action for contribution must have discharged the liability of the person from whom contribution is sought by payment made within the period of the statute of limitations applicable to the claimant's right of action and must have commenced the action for contribution within one year after the date of that payment.

b. The person seeking contribution must have agreed while the action of the claimant was pending to discharge the liability of the person from whom contribution is sought and within one year after the date of the agreement must have discharged that liability and commenced the action for contribution.

Iowa Code § 668.6. Under Iowa Code § 668.6(1), an action for contribution will lie only if a party pays more than its percentage share of damages, as established in a comparative fault action pursuant to Iowa Code § 668.3. In its cross-claim, Goss seeks only to force Dean to pay its percentage share of fault and seeks

4. In *Biddle,* the Iowa Supreme Court made the rather curious statement that "[t]his right of indemnity held by the principal is neither governed by chapter 668 nor otherwise tempered by its provisions regarding contribution among joint tortfeasors." *Biddle,* 518 N.W.2d at 799 (citing *Thomas v. Solberg,* 442 N.W.2d 73, 75 (Iowa 1989), and *Rees v. Dallas County,* 372 N.W.2d 503, 505 (Iowa 1985)). Neither of the cases upon which the court in *Biddle* relied stands for such a proposition. Rather, in *Thomas,* the court looked to the provisions of Chapter 668 to determine which rule should be applied to contribution from settling parties, and the court concluded that Chapter 668 barred application of the *"pro tanto* credit rule,"* although the court observed that "Chapter 668 does not speak to th[e] issue" of whether a defendant's indemnity claim survives post-settlement. *See Thomas,* 442 N.W.2d at 75–76. In *Rees,* the Iowa Supreme Court concluded that Chapter 668 barred indemnity based on "active-passive negligence," concluding, in part, that such indemnity was a form of contribution governed by Chapter 668, and that Chapter 668 preserves the "common liability" rule, although the court noted that "Iowa Code chapter 668 does not directly address the question of indemnity." *See Rees,* 372 N.W.2d at 505–06. The Iowa Supreme Court's point in *Biddle* appears to be that a tortfeasor can bring an independent action for indemnity that is not within the context of an action brought by the injured party, which would be governed by Iowa's Comparative Fault Act. The present indemnity and contribution claim, however, has been brought in the context of Mr. Goebel's personal injury action, and, as shall be seen, seeks only contribution on a basis permitted by Iowa Code Ch. 668. Thus, the "indemnity" cross-claim at issue here is governed by Iowa Code Ch. 668.

contribution to the extent that a judgment is entered against Goss that represents Dean's proportionate percentage of liability. Cross–Claim at ¶¶ 4–5. Thus, Goss's cross-claim is congruous with a contribution claim under IOWA CODE § 668.6(1).

Therefore, Goss's cross-claim will lie. However, Goss's contribution claim is not yet *enforceable*, because no judgment has yet been reached in this action, nor have the preconditions for enforcement of a pre-judgment contribution claim been established. *See* IOWA CODE § 668.6(3)(a) & (b). However, Goss's cross-claim is sufficient to put at issue Dean's comparative fault in Mr. Goebel's personal injury action. *See Kragel,* 537 N.W.2d at 706–07. Thus, Dean is not entitled to summary judgment on Goss's cross-claim, because adequate authority exists for the cross-claim in the circumstances alleged here.

### III. CONCLUSION

Although Dean argues that it cannot be liable to Mr. Goebel under the "general rule" of RESTATEMENT (SECOND) OF TORTS § 409 that an employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants, which would mean that Dean cannot be liable for the negligence of Norton, the party that actually installed the printing press, the court concludes that exceptions to the "general rule" preclude summary judgment here. Specifically, the court finds that Dean can be liable to Mr. Goebel either for Dean's own negligence in failing to inspect the work of Norton, pursuant to RESTATEMENT (SECOND) OF TORTS § 412, or vicariously as a party subject to a non-delegable duty to insure the printing press was properly installed, pursuant to *Giarratano* and RESTATEMENT (SECOND) OF TORTS § 404. Therefore, Dean's motion for summary judgment on Mr. Goebel's negligence claim is **denied,** because Dean was subject to a duty to Mr. Goebel and can be held liable to Mr. Goebel.

Furthermore, the court concludes that Dean's motion for summary judgment on Goss's cross-claim must also be denied. First, the viability of Mr. Goebel's negligence claim against Dean defeats Dean's argument for summary judgment on the cross-claim on the ground that the cross-claim was dependent upon the viability of Mr. Goebel's claim. Second, the court finds that there is a basis for Dean's cross-claim, in Iowa statutory and common law, even if the indemnity provision of the purchase order does not provide a contractual right to indemnity.

Therefore, Dean's motion for summary judgment is **denied** in its entirety.

**IT IS SO ORDERED.**